PATRICIA ECKERT *v.* DAVID ECKERT
(SC 17943)
(SC 17944)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Schaller, Js.

Argued October 22, 2007—officially released March 4, 2008

*Samuel V. Schoonmaker IV*, for the appellant (plaintiff).

*George J. Markley*, with whom, on the brief, was *Michael A. Meyers*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The dispositive issue in the present appeal is whether a clause in a separation agreement that precludes modification of the amount or duration of alimony also bars modification of the definition of "gross yearly earned income," as set forth in a separate section of the separation agreement. The plaintiff, Patricia Eckert, appeals[1] from the trial court's denials of her two postdissolution motions seeking a modification of the definition of "gross yearly earned income" in the separation agreement between her and the defendant,

---

[1] In two separate appeals, the plaintiff appealed from the rulings of the trial court to the Appellate Court. The Appellate Court granted the defendant's motion to consolidate the appeals. We subsequently granted the plaintiff's motion to transfer the consolidated appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

David Eckert. In support of her claim, the plaintiff contends that the trial court improperly: (1) concluded that the separation agreement's prohibition of modification of the amount and duration of alimony also precluded modification of the definition of "gross yearly earned income"; (2) declined to exercise its equitable powers to modify the agreement in order to preserve the original intent of the parties; and (3) arrived at its rulings without first holding an evidentiary hearing. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedure. On July 7, 2000, the trial court dissolved the marriage of the parties. In accordance with General Statutes § 46b-66,[2] the judgment of dissolution incorporated by reference the parties' separation agreement, which contained a clause prohibiting modification of the defendant's alimony obligations as set forth in article 2.1 of the agreement. Article 2.1 of the separation agreement required the defendant to pay a percentage of his gross yearly earned income to the plaintiff as alimony. Article 2.2 of the agreement defined the term "gross yearly earned income" as "income actually received by the [defendant]" and expressly excluded from the defendant's income future stock grants and the exercise of stock options.

At the time of the parties' dissolution, the defendant, who was employed as the president of Rhodia, S.A., represented in his financial affidavit that he had a base gross income totaling $37,500 per month, or $450,000

---

[2] General Statutes § 46b-66 (a) provides in relevant part: "In any case under this chapter where the parties have submitted to the court an agreement . . . concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses . . . in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ."

per year, with bonuses and options at an approximate monthly gross of $40,916, or $490,992 per year. In January, 2004, the defendant's employment with Rhodia, S.A., terminated. In November, 2004, the defendant accepted a position as the chief executive officer with Exavera Technologies, Inc., where he was compensated by debt instruments that may be converted into stock.

In February, 2004, the plaintiff filed a motion for contempt, alleging that the defendant was in violation of the orders of the trial court because the defendant had stopped making alimony payments.[3] Soon thereafter, based on the fact that the defendant was not working, the plaintiff filed a motion seeking a court order directing the defendant to pay alimony based on his earning capacity. She also filed a motion seeking alteration or modification of the definition of "gross yearly earned income" in article 2.2 of the separation agreement.[4] After the defendant obtained employment with Exavera Technologies, Inc., the plaintiff amended her motion for modification, seeking modification of the definition of "gross yearly earned income" to include the type of compensation that the defendant received from Exavera Technologies, Inc. The plaintiff

[3] The record does not reflect the outcome of the motion for contempt, and there is no indication that the plaintiff pursued a resolution of the motion. Similarly, there is no indication that subsequent motions for contempt filed by the plaintiff were acted on by the trial court, or that the plaintiff pursued a resolution of those motions.

[4] The defendant moved to strike both the plaintiff's motion for order and her motion seeking alteration or modification, on the basis that the preclusion of modification of alimony in the separation agreement deprived the court of jurisdiction to modify the agreement in accordance with the plaintiff's motions. The court initially had denied the defendant's motion to strike, but granted the motion upon reargument and reconsideration, concluding that the agreement unambiguously precluded the modification sought by the plaintiff. Subsequently, the court granted the plaintiff's motion for reconsideration and concluded that the defendant's motion to strike should be denied because it was an improper vehicle by which to challenge the validity of a postjudgment motion.

also subsequently amended her motion seeking a court order that the defendant pay alimony based on the value of his compensation and his earning capacity.

In November, 2005, the court sustained the defendant's objection to the plaintiff's motion for alteration and modification, concluding that the agreement plainly and unambiguously precluded modification of the definition of "gross yearly earned income." Following reargument, the court denied the plaintiff's motion to reconsider and vacate its ruling on the motion for alteration and modification. In an articulation of its decision, the court clarified that article 2.4 of the separation agreement precludes the parties from seeking an *alteration* of article 2.2 of the agreement. In November, 2006, the trial court sustained the defendant's objection to the plaintiff's motion requesting the court to order the defendant to pay alimony based on the value of his compensation and earning capacity. The plaintiff appealed from the trial court's rulings sustaining the defendant's objections both to her motion seeking a modification of alimony, and to her motion seeking a court order that the defendant pay alimony.

I

We first address the plaintiff's claim that the trial court improperly concluded that the separation agreement between her and the defendant plainly and unambiguously precluded the modification of the definition of "gross yearly earned income" in article 2.2 of the agreement. The trial court reasoned that, because modification of the definition of "gross yearly earned income" necessarily would change the amount of alimony that the defendant currently is obligated to pay under the separation agreement, the provision of the agreement precluding the modification of the amount and duration of alimony also unambiguously precluded

modification of the definition. We agree with the trial court.

Our interpretation of a separation agreement that is incorporated into a dissolution decree "is guided by the general principles governing the construction of contracts." (Internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). A contract must be construed to effectuate the intent of the parties, which "is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 109–10, 900 A.2d 1242 (2006). "Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002). If the language of a contract is clear and unambiguous, the intent of the parties is a question of law, subject to plenary review. *Montoya* v. *Montoya*, 280 Conn. 605, 612, 909 A.2d 947 (2006).

Modification of alimony is governed by General Statutes § 46b-86, subsection (a) of which provides in relevant part: "Unless and to the extent that the decree precludes modification . . . an order for alimony . . . may at any time thereafter be . . . altered or modified . . . upon a showing of a substantial change in the circumstances of either party . . . ." It is well established within our jurisprudence that "[p]rovisions which preclude modification of alimony [or support] tend to be disfavored." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 730, 724 A.2d 1084 (1999). In accordance with the preference in favor of modification, ambiguous nonmodification provisions are construed to permit modification. Id. Nonmodification provisions that are clear and unambiguous, however, are enforceable. General Statutes § 46b-86 (a); *Amodio* v. *Amodio*, 56 Conn. App. 459, 471, 743 A.2d 1135, cert. granted, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000); *Wichman* v. *Wichman*, 49 Conn. App. 529, 535, 714 A.2d 1274, cert. denied, 247 Conn. 910, 719 A.2d 906 (1998).

In deciding whether the trial court properly concluded that the separation agreement precluded modification of the definition of "gross yearly earned income," therefore, we must determine whether the agreement unambiguously precluded the plaintiff's requested modification. Article 2.4 of the separation agreement provides: "The parties are expressly precluded from seeking a modification of the [defendant's] obligations under article 2.1 as to the amount or the duration of alimony except as provided in article 2.1." Article 2.1 of the separation agreement provides in relevant part: "During the lifetime of the [defendant] or until the death or remarriage of the [plaintiff] or cohabitation of the [plaintiff] . . . the [defendant] shall pay alimony to the [plaintiff] in an amount equal to [33.33] [p]ercent . . . of the first $450,000 [of] his *gross yearly earned income.*

The [defendant] shall pay to the [plaintiff] additional alimony of [25] [p]ercent . . . of his gross yearly earned income between $450,000 and $800,000. The [plaintiff] shall not be entitled to any share of the [defendant's] income over $800,000. . . ." (Emphasis added.) The term "gross yearly earned income" is defined in article 2.2 as "income actually received by the [defendant] and income which he has a right to receive in each calendar year . . . from any and all sources derived. . . . '[G]ross yearly earned income' shall include all income from wages, salaries, bonuses, pensions . . . consulting or other fees, commissions, director's fees, except that future stock grants and the exercise of stock options by the [defendant] shall be excluded from the [defendant's] yearly earned income."

We first note that the plaintiff does not dispute that article 2.4 of the separation agreement clearly and unambiguously precludes modification of article 2.1 as to the amount or duration of alimony. Article 2.4 does not state expressly that the parties are precluded from seeking a modification of article 2.2 of the agreement, the section that the plaintiff seeks to modify. The modification of article 2.2 that the plaintiff seeks, however, effectively would cause a modification of article 2.1 by modifying the amount of alimony that the defendant is obligated to pay to the plaintiff under article 2.1. Because the defendant currently is compensated only through debt instruments that can be converted to stock, the defendant is not obligated under article 2.1 to pay the plaintiff any alimony. A modification of the definition of "gross yearly earned income" as set forth in article 2.2 to include stocks, or debt instruments, or to include the defendant's "earning capacity" would obligate the defendant to make some payment of alimony to the plaintiff. Such a change, from an obligation to pay *no* money to the plaintiff as alimony, to an obligation to pay *some* money to the plaintiff as alimony,

constitutes a "modification of the [defendant's] obligations under article 2.1 as to the amount . . . of alimony" under article 2.4 of the separation agreement. The modification that the plaintiff seeks, therefore, is clearly and unambiguously precluded by the agreement.

We find unpersuasive the plaintiff's argument that the trial court improperly determined that article 2.4 of the separation agreement precluded alteration of both articles 2.1 and 2.2. The plaintiff contends that § 46b-86 distinguishes between alteration and modification. Specifically, the plaintiff relies on the language in § 46b-86 (a), which provides that any final order of alimony may be "continued, set aside, *altered or modified* by [the] court . . . ." (Emphasis added.) On the basis of this language, the plaintiff claims that alteration and modification are separate actions that a court may take with respect to a final order for alimony. The plaintiff next points out that article 2.4 of the agreement precludes the parties only from seeking a modification of article 2.1, and that it does not preclude the parties from seeking an alteration of article 2.1. The plaintiff does not explain precisely how, under the circumstances of the present case, an alteration differs from a modification, nor does she claim that she sought distinct relief in the form of an alteration, as opposed to the relief she sought as a modification. Rather, the plaintiff appears to contend that if she labels her requested relief as an alteration, the nonmodification provision in the separation agreement simply does not apply. We agree with the trial court that the statutory language resolves this issue. Specifically, § 46b-86 (a) provides in relevant part: "*Unless and to the extent that the decree precludes modification* . . . any final order for the periodic payment of . . . alimony . . . may at any time thereafter be continued, set aside, altered or modified . . . ." (Emphasis added.) Thus, the statute permits a court to alter an order for alimony only in

the absence of a nonmodification clause that would extend to bar the requested change. We have already concluded that the nonmodification provision in article 2.4 bars the change that the plaintiff seeks—a change in the definition of "gross yearly earned income"—regardless of whether she denotes the change an alteration or modification.

## II

We next address the plaintiff's claim that the trial court improperly declined to exercise its equitable powers to modify the separation agreement in order to preserve the original intent of the parties. The plaintiff contends that the trial court incorrectly characterized the relief that she sought in her motion seeking equitable orders as identical to that sought in her motion for modification or alteration of alimony. Therefore, the plaintiff claims, the agreement's nonmodification provision did not bar the court from ordering the defendant to pay alimony based on the value of his compensation and his earning capacity. We disagree.

A trial court in a dissolution action has broad equitable powers under our dissolution statutes. *Doe* v. *Doe*, 244 Conn. 403, 443, 710 A.2d 1297 (1998). Those powers do not, however, allow the court to rewrite a separation agreement that has been incorporated into the judgment of dissolution. As we explained in part I of this opinion, the nonmodification provision of the agreement prohibited the modification of article 2.2 of the agreement, which defined "gross yearly earned income" as "income actually received by the [defendant]," and expressly excluded from the defendant's income future stock grants and the exercise of stock options. The plaintiff's motion seeking equitable relief asked the court to order the defendant to pay alimony based on earning capacity, in other words, based on income *not actually received*, and to include the value of debt instruments that may

later be converted into stock in determining the amount of alimony owed by the defendant to the plaintiff. Such orders would require the court to modify the definition of "gross yearly earned income" in article 2.2 of the agreement. The plaintiff cannot circumvent the agreement by characterizing the relief requested broadly, as "equitable" in nature, as opposed to a specific request for modification.

We are similarly unpersuaded by the plaintiff's argument that, because she had alleged that the defendant exploited this "technicality" in the agreement, and structured his compensation package with Exavera Technologies, Inc., in order to avoid his obligation to pay support to the plaintiff—an allegation disputed by the defendant—the trial court should have conducted an evidentiary hearing to determine whether the allegations were true, and if so, the court should have granted the plaintiff's requested equitable relief in order to preserve the original intent of the agreement, namely, to guarantee continuing support to the plaintiff. The plaintiff provides no support, however, for her claim that the court would have had authority to rewrite the agreement between the parties even if the court had concluded that the defendant structured his compensation with his present employer in order to avoid paying alimony to the plaintiff. The limits of the defendant's obligations were present at the time that the parties arrived at the separation agreement. The plaintiff did not bargain for an alimony obligation on the basis of the defendant's earning capacity. Nor did she retain the right to modify the alimony provision. She cannot now seek a modification of that agreement, which is what she asked the trial court to order, and which the trial court properly refused to do.

### III

The plaintiff lastly claims that the trial court improperly granted the defendant's objection to the plaintiff's

motion for alteration or modification without first holding an evidentiary hearing. We are not persuaded.

In the defendant's objection to the plaintiff's motion for alteration or modification, he argued that the nonmodification clause in the separation agreement precluded the plaintiff from seeking a modification of article 2.2 of the separation agreement because the requested modification would change the defendant's alimony obligation as set forth in article 2.1 of the agreement. The trial court agreed, and, as we have explained in part I of this opinion, the court concluded that the nonmodification clause was clear and unambiguous. Because the interpretation of a clear and unambiguous provision of a separation agreement involves a question of law, the trial court properly declined to hold an evidentiary hearing.

Relying on our decision in *Ahneman* v. *Ahneman*, 243 Conn. 471, 480, 706 A.2d 960 (1998), the plaintiff contends that the trial court's grant of the defendant's objection without first holding an evidentiary hearing amounted to a refusal to consider her motion for alteration or modification. *Ahneman*, however, is readily distinguishable from the present case. In that case, the trial court had rendered an oral decision specifically declining to consider the subject motions. Id., 475. The trial court in the present case did not so decline consideration of the plaintiff's motion. The court heard argument on the defendant's objection on October 12, 2005. During the course of that argument, both parties presented arguments to the court in support of their interpretation of the separation agreement. The plaintiff appears to contend, however, that by not allowing her to present evidence, the court functionally refused to consider her motion for modification or alteration. In considering a motion that involves only a question of law and not one of fact, however, a trial court is not obligated to conduct an evidentiary hearing. By

allowing the parties to present arguments in support of their respective positions, the court duly considered both the plaintiff's motion and the defendant's objection.

The plaintiff also argues that the court should not have granted the defendant's objection because, since the objection sought the same relief that the defendant's motion to strike had sought, namely, a denial of the requested relief, the objection, like the motion to strike, was improper. We are unpersuaded. As we already have noted, the trial court had determined that a motion to strike was an improper procedural vehicle by which to challenge a postdissolution motion, and accordingly had denied the defendant's motion to strike the plaintiff's motion for alteration or modification. See footnote 4 of this opinion. That ruling on purely procedural grounds had no bearing on the resolution of a proper objection to the plaintiff's motion for alteration or modification.

Finally, the plaintiff claims that the trial court's resolution of the objection without an evidentiary hearing improperly deprived her of the opportunity to show that the defendant had engaged in bad faith by intentionally arranging to be compensated in such a way as to avoid his obligation to pay the plaintiff alimony. We disagree. The separation agreement obligated the defendant to pay the plaintiff a percentage of his gross yearly earned income, as defined in article 2.2 of the separation agreement. The trial court properly concluded that the nonmodification provision of the agreement clearly and unambiguously precluded modification of the definition of gross yearly earned income to include forms of compensation that specifically had been excluded by the agreement. For example, the definition in article 2.2 limited the defendant's gross yearly earned income to income "actually received" by the defendant. If the defendant had elected to retire and not collect *any*

compensation, even if that decision were motivated solely by the desire to deprive the plaintiff of alimony, evidence of his motivation would be irrelevant to the trial court's resolution of the plaintiff's motion for alteration or modification, because the separation agreement clearly and unambiguously precludes such modification, rendering the resolution of the issue a matter of law, not one subject to an evidentiary hearing.

The judgment is affirmed.

In this opinion the other justices concurred.