DEBRA TOMLINSON *v.* JOHN A. TOMLINSON
(AC 29735)

Flynn, C. J., and Harper and Dupont, Js.

Argued October 21, 2009—officially released February 2, 2010

*Richard W. Callahan,* for the appellant (plaintiff).

*Stuart Hawkins,* with whom, on the brief, were *Daniel Shepro* and *Joanne Rapuano,* for the appellee (defendant).

### Opinion

FLYNN, C. J. The plaintiff, Debra Tomlinson, appeals from the judgment of the trial court granting the motion

of the defendant, John A. Tomlinson, to modify the unallocated alimony and child support order incorporated by reference into the judgment dissolving the parties' marriage and from the judgment of the court denying her motion for contempt. On appeal, the plaintiff claims that (1) the court improperly granted the motion to modify because the agreement of the parties expressly precluded modification and (2) the court improperly failed to grant her motion for contempt and awarded her an insufficient amount of attorney's fees and costs. We conclude that parties are expressly authorized by statute to agree to make unallocated periodic alimony and child support nonmodifiable although the court must retain the authority to modify such orders where the evidence demonstrates that the needs of the parties' children warrant modification. The record in the present case is clear that none of the contingencies for which the parties bargained permitting modification had occurred. Additionally, the nonmodifiable provision was part of an integrated and comprehensive agreement consisting of all financial orders and property division made a part of the final decree of dissolution. Finally, because the record is devoid of any indication that the minor children of the marriage did not receive proper financial support, the court had no evidentiary ground based on public policy that children receive adequate support to permit modification for that reason. We, therefore, reverse the judgment of the trial court modifying the unallocated alimony and child support order. Because the court's judgment regarding the plaintiff's motion for contempt and attorney's fees was dependent in part on our resolution of the plaintiff's first claim, we reverse that judgment as well.

The record reveals the following undisputed relevant facts. Following an uncontested dissolution hearing held on December 9, 2005, the court, *B. Fischer, J.,*

accepted the separation agreement of the parties and incorporated it by reference into its judgment dissolving the parties' marriage. According to the terms of the agreement, the plaintiff and the defendant would have joint legal custody and the plaintiff primary physical custody of the parties' two children. The children, who were ages ten and five at the time, were not represented by counsel. The guardian ad litem for the children signed the agreement directly below a statement indicating that he approved and acknowledged the parties' agreement "with respect to the custody, visitation and counseling issues pertaining to the minor children."

Paragraph 2.1 of the agreement provides in relevant part: "Commencing the first day of the week following the [plaintiff's] removal from the residence at 1158 West River Street, Milford, Connecticut . . . the [defendant] agrees to pay to the [plaintiff] unallocated periodic alimony and child support, until June 30, 2018, or until her death, remarriage, or cohabitation pursuant to [General Statutes] § 46b-86 (b), whichever shall first occur, the sum of Seventy Two Thousand Dollars ($72,000.00) per year or One Thousand Five Hundred Dollars[1] ($1,384.00) per week. THE UNALLOCATED PERIODIC [ALIMONY] AND CHILD SUPPORT SHALL BE [NON-MODIFIABLE] IN AMOUNT AND TERM OF PAYMENTS EXCEPT AS NOTED ABOVE."[2] The only exceptions "noted above" in the agreement are those

---

[1] The reference to "One Thousand Five Hundred Dollars" in paragraph 2.1 is unexplained by the parties on appeal, who refer solely throughout their briefs to the corresponding payment amounts of $72,000 per year and $1384 per week. As such, the reference appears to be a scrivener's error.

[2] Under the agreement, the plaintiff agreed to quitclaim to the defendant her interest in two properties in Milford and to forgo any claim against the defendant's property in Utah. The plaintiff also agreed to transfer to the defendant her interest in New England Stone, Inc., the defendant's business. In addition to the unallocated alimony and child support order, the defendant agreed to pay to the plaintiff $400,000. The parties agreed to retain their own bank and retirement accounts and personal property.

contained within paragraph 2.1 itself. The final sentence of the paragraph is the only portion of the separation agreement typed entirely in capital letters. The parties did not incorporate into their agreement any provision permitting modification of the unallocated support order if primary custody of the children changed.

The parties agreed by way of a stipulated order filed June 12, 2007, that primary physical custody of the children would be transferred to the defendant. However, despite this transfer, the plaintiff still enjoyed visitation with the children two days a week and every other weekend in her home. On November 16, 2007, the defendant filed a motion to modify the unallocated support order, seeking a reduction in the amount of support he paid to the plaintiff on the ground that custody had changed. The plaintiff opposed the motion, filing a motion asking the court to strike the defendant's modification request and arguing that the agreement by its terms precluded modification.

The court, *Turner, J.,* held a hearing on the defendant's motion on February 6, 2008, during which the plaintiff and the defendant testified. The defendant testified as to the change in custody, noting that he currently covered expenses such as the children's cellular telephones, gymnastics, entertainment and transportation and that the plaintiff did not contribute to these expenditures. The guardian ad litem for the children attended but did not participate in the hearing, and the children were not represented by counsel. We deem it a matter of some considerable significance that the defendant presented no evidence that the children's needs for support had changed or were not being met sufficiently under the agreement. Nothing else in the record indicates that the children's needs were unmet. Nonetheless, the court held that despite the nonmodifiable language of paragraph 2.1, the separation agreement was modifiable. It pointed to paragraphs 2.5

and 2.7 of the agreement,[3] which provide direction in the event of a change in or termination of alimony and child support, opining that the provisions demonstrated the parties' clear contemplation of a future change in the unallocated support order. The court found that the change in custody of the children constituted a substantial change in circumstances.

At the conclusion of the hearing, the court granted the defendant's motion and modified the separation agreement, concluding that the defendant no longer was obligated to pay child support to the plaintiff. On the basis of the parties' financial affidavits and the child support guidelines in effect at the time the dissolution judgment entered, the court determined that the child support portion of the unallocated order was $604 per week, and it reduced the defendant's unallocated order of alimony and support to the plaintiff by that amount. The plaintiff subsequently filed a motion for reargument, which the court denied. This appeal followed. Additional facts will be supplied as necessary.

I

The plaintiff first claims that the court improperly granted the defendant's motion to modify the unallocated alimony and child support order. She argues that

_____

[3] Paragraph 2.5 of the separation agreement provides: "If in the future the amount of alimony changes and/or terminates and a determination needs to be made for child support, the court shall determine the amount in accordance with the child support guidelines."

Paragraph 2.7 of the separation agreement provides: "In the event of the termination of unallocated alimony and child support provided in [paragraph] 2.1 hereof during the minority of any child, the parties shall determine the amount of child support to be paid by the [defendant] for the support of the minor child or children subject to [General Statutes] § 46b-84 (c) until said child has attained the age of eighteen (18) except if that child has turned eighteen (18), but has not yet graduated from high school then in that event, the earlier of such child's attaining the age of nineteen (19) or graduating from high school. In the event they are unable to agree, the amount of such child support payments shall be determined by a court of competent jurisdiction. Said amount to be paid shall be retroactive to the date of the termination of alimony with appropriate adjustment."

the parties' agreement, incorporated by reference into the judgment of dissolution, clearly and unambiguously precluded modification of the order except in certain enumerated circumstances, none of which were present here. Thus, she contends, under § 46b-86 (a),[4] the court could not modify the agreement as to child support. In opposition, the defendant maintains that despite the language of the agreement cited by the plaintiff, the court properly modified the child support portion of the agreement under the court's broad power to act in the best interests of the parties' children. Because no evidence was presented that the children's needs were unmet, thereby justifying abrogation of the parties' agreement, we agree with the plaintiff that the agreement was not modifiable under the circumstances present in this case.

We begin by setting forth the applicable standard of review and principles of law underlying the plaintiff's claim. It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is a contract between the separating parties. See *Issler* v. *Issler*, 250 Conn. 226, 234–35, 737 A.2d 383 (1999). Accordingly, our review of a trial court's interpretation of a separation agreement "is guided by the general principles governing the construction of contracts." (Internal quotation marks omitted.) Id., 235. "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous."

---

[4] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be . . . altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

(Citation omitted; internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 711, 980 A.2d 880 (2009). Here, the pertinent language of the separation agreement is clear and unambiguous, and, thus, our review of the court's interpretation is plenary.

We first analyze the common law and statutory duty of parental child support and then turn our analysis to why that important policy does not warrant modification of the unallocated order in the present case. The common-law duty of parents to provide for their children preceded recognition and enforcement of that duty in our statutory scheme. See *Guille* v. *Guille*, 196 Conn. 260, 263–64, 492 A.2d 175 (1985), citing *Burke* v. *Burke*, 137 Conn. 74, 75 A.2d 42 (1950). "The [parent's] duty to support . . . is a continuing obligation, which ordinarily exists even apart from any judgment or decree of support. . . . A parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability." (Citations omitted; internal quotation marks omitted.) *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 350, 885 A.2d 194 (2005). Our statutes reflect the parental duty of child support. See, e.g., General Statutes § 46b-37 (b) ("it shall be the joint duty of each spouse to support his or her family"); General Statutes § 46b-84 (a) ("[u]pon or subsequent to the . . . dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, *if the child is in need of maintenance*" [emphasis added]); General Statutes § 46b-215 (a) (1) ("[t]he Superior Court . . . may make and enforce orders for payment of support against any person who neglects or refuses to furnish *necessary support* to such person's . . . child under the age of eighteen . . . according to such person's ability to furnish such support" [emphasis added]). These statutes embody the strong public policy interest

of the state pertaining to matters of "needed" or "necessary" child support. "It is . . . in the interest of society that the child be supported by those obligated to support the child and that the child not be required to seek public assistance to satisfy those needs unless otherwise necessary." *Mulholland* v. *Mulholland*, 31 Conn. App. 214, 218, 624 A.2d 379 (1993), aff'd, 229 Conn. 643, 643 A.2d 246 (1994).

The trial court's authority over issues of alimony and child support also is firmly rooted in our statutory law. Pursuant to General Statutes § 46b-1, the Superior Court exercises plenary and general subject matter jurisdiction over legal disputes in "family relations matters," including issues of alimony and child support. *Amodio* v. *Amodio*, 247 Conn. 724, 729, 724 A.2d 1084 (1999); see also General Statutes § 46b-212h (a) (granting family support magistrate division or Superior Court exclusive jurisdiction over child support orders it previously has issued). General Statutes § 46b-56 (a) provides the court broad authority to "make or modify any proper order regarding the custody, care, education, visitation and support" of minor children in dissolution actions. See *Guille* v. *Guille*, supra, 196 Conn. 266. Section 46b-86 (a) vests the Superior Court with "continuing jurisdiction to modify support orders." *Amodio* v. *Amodio*, supra, 729. In making or modifying such orders, the court is to be guided by "the best interests of the child . . . ." General Statutes § 46b-56 (b).

We next analyze why the important policy ensuring child support does not warrant upsetting the nonmodifiable unallocated order in the parties' dissolution decree. Modification of alimony and support orders is governed by § 46b-86 (a), which provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be . . . altered or modified by said court upon a

showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines . . . unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ." General Statutes § 46b-86 (a).The clear language of the statute permits nonmodifiable support orders. *Amodio* v. *Amodio*, 56 Conn. App. 459, 471, 743 A.2d 1135, cert. granted, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000). Although permissible, provisions prohibiting the modification of alimony or support are disfavored. *Eckert* v. *Eckert*, 285 Conn. 687, 693, 941 A.2d 301 (2008). "In accordance with the preference in favor of modification, ambiguous nonmodification provisions are construed to permit modification. . . . Nonmodification provisions that are clear and unambiguous, however, are enforceable." (Citation omitted.) Id.

The plaintiff cites the recent decision of *Eckert* v. *Eckert*, supra, 285 Conn. 687, in support of her argument that the court improperly modified the parties' agreement as to child support. In *Eckert*, the parties' separation agreement, incorporated by reference into the dissolution judgment, contained a clause prohibiting modification of the defendant's alimony obligation, which was to be a percentage of his gross yearly earned income. Id., 689. The agreement defined "gross yearly earned income" as "income actually received" by the defendant, and expressly excluded from this definition future stock grants and the exercise of stock options. Id. Approximately four years after the dissolution of the parties' marriage, the defendant's employment was terminated, and he obtained another position where his compensation consisted of debt instruments that could be converted into stock. Id., 690. The plaintiff moved to modify the separation agreement's definition of gross

yearly earned income to include the type of compensation the defendant received in his new position. Id. The court sustained the defendant's objection to the motion, holding that the agreement plainly and unambiguously precluded modification of the definition. Id., 691.

On appeal, the Supreme Court concluded that the nonmodification provision of the agreement was clear and unambiguous. Id., 693–95. The court further agreed with the trial court that the language of § 46b-86 (a), combined with the clear nonmodification clause, resolved the issue. The court explained: "[Section] 46b-86 (a) provides in relevant part: '*Unless and to the extent that the decree precludes modification* . . . any final order for the periodic payment of . . . alimony . . . may at any time thereafter be continued, set aside, altered or modified . . . .' Thus, the statute permits a court to alter an order for alimony only in the absence of a nonmodification clause that would extend to bar the requested change." (Emphasis in original.) Id., 695–96.

Although *Eckert* provides guidance regarding the application of § 46b-86 (a), the statute at issue in the present case, *Eckert* is distinguishable in one important regard. The dispute in *Eckert* concerned modification of an alimony order only. See id., 689. The issue before this court concerns an unallocated order of alimony *and* child support.

In support of his contrary argument that the court's modification of the child support portion of the agreement was proper, the defendant relies primarily on our Supreme Court's decision in *Guille* v. *Guille*, supra, 196 Conn. 260. In that case, the judgment dissolving the parties' marriage incorporated by reference the parties' separation agreement. Id., 261. The agreement contained a provision limiting subsequent modification

of the agreement to the provisions concerning visitation. Id. The parties were represented by counsel at the time of the dissolution, but their three minor children were not represented. Id., 261–62. Six years following the entry of judgment, counsel for the minor children moved the court to "correct" the judgment of dissolution by deleting the provision precluding modification of custody and child support. Id., 262. Following a hearing, the court granted the motion. Id.

On appeal, the defendant father challenged the court's decision, arguing that § 46b-86 (a) should have prevented the court from deleting the provision prohibiting modification of the terms of child support[5] as set forth in the judgment. Id. The Supreme Court held that "neither the general language of . . . § 46b-86 (a), permitting the court to modify support '[u]nless and to the extent that the decree precludes modification,' nor the decree's broadly phrased nonmodifiability provision, was effective to restrict permanently the court's power to modify the terms of child support under the circumstances of this case." Id., 265. The court emphasized both the "independent character"; id., 263; of the minor children's common law right to parental support and the trial court's continuing jurisdiction to "make or modify any proper order regarding the . . . support of the [minor] children" pursuant to General Statutes § 46b-56 (a). (Internal quotation marks omitted.) Id., 262. After reviewing the circumstances surrounding the passage of the underlying legislation, the court stated that it could not conclude that the legislature intended § 46b-86 (a) to change the common-law rule prohibiting parents from contractually restricting or defeating their children's right to support. Id., 267. Affirming the decision of the trial court, the Supreme Court concluded:

---

[5] The defendant in *Guille* disputed only the court's order deleting the provision with regard to child support, conceding that § 46b-86 (a) " 'does not allow a judgment to prevent modification of a final order for custody' . . . ." *Guille* v. *Guille*, supra, 196 Conn. 264–65.

"Since the court was without power to enter an order that would permanently restrict the unrepresented children's rights, it was not error, upon a motion by the children, to open the . . . divorce judgment and delete the provision purporting to preclude modification of child support and custody." Id., 268.

We next turn to the defendant's contention that all unallocated, nonmodifiable orders of alimony and child support are always modifiable. He argues that *Guille* stands for the proposition that the court may modify the child support component of an otherwise nonmodifiable agreement. At oral argument, the defendant expressed the opinion that under *Guille*, an agreement *could not be nonmodifiable* as to child support. We cannot agree with the broad reading of the case advanced by the defendant.

As a preliminary matter, we note that the plain text of § 46b-86 (a) belies the defendant's argument. The statute clearly permits nonmodifiable support orders, such as the one to which the parties agreed in the present case. See *Amodio* v. *Amodio*, supra, 56 Conn. App. 471. Section 46b-86 (a) is substantially the same today as it was in 1985 when the Supreme Court decided *Guille*. Although the court held that § 46b-86 (a) and the agreement's nonmodifiability provision did not prohibit modification of the agreement in that case, it did not hold that nonmodifiable child support agreements were impermissible under the statute or that nonmodifiable orders were always modifiable, as the defendant contends. Presumably, had the court desired to render the holding the defendant here posits, it could have stated clearly that parties could not agree to make child support orders nonmodifiable. Rather than making such a broad statement of the law, the court expressly limited its holding to the circumstances of that case. *Guille* v. *Guille*, supra, 196 Conn. 265. It held: "We conclude that neither the general language of . . . § 46b-86 [a] . . .

nor the decree's broadly phrased nonmodifiability provision, was effective to restrict permanently the court's power to modify the terms of child support *under the circumstances of this case.*" (Emphasis added.) Id. Further, *Guille* has never been cited, either by our Supreme Court or by this court, for the proposition that child support orders may not be made nonmodifiable by agreement of the parties.

We believe the holding of *Guille* is more limited: parties to a dissolution action may not, by means of a nonmodifiable separation agreement, permanently restrict their unrepresented children's independent right to child support. See id., 268. The *Guille* court upheld the common-law rule prohibiting parents from "contractually restricting or defeating their children's right to support"; id., 265, citing *Burke* v. *Burke*, supra, 137 Conn. 74; without going so far as stating that a separation agreement concerning child support could *never* be made nonmodifiable. The *Guille* court's opinion underscores both the independent nature of the children's right to the support of their parents and, especially, the fact that the children had been unrepresented through the dissolution proceedings: "Although the . . . stipulation and judgment may have been effective to define permanently the support obligations of the divorcing parties as between themselves, neither their agreement nor the court's decree can be held binding as to their minor children, *who were unrepresented* during both the negotiation of the stipulation and the dissolution proceedings. Since the stipulation is merely a contract between the defendant husband and the plaintiff wife, it could not affect the minor children's right of action for parental maintenance. . . . The divorce decree was likewise ineffective to establish conclusively the extent of the children's support rights because *they were not represented* when that judgment was entered. It is a fundamental premise of due process

that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved. . . . Since the court was without power to enter an order that would permanently restrict the *unrepresented children's* rights, it was not error, upon a motion by the children, to open the . . . divorce judgment and delete the provision purporting to preclude modification of child support and custody." (Citations omitted; emphasis added; internal quotation marks omitted.) *Guille* v. *Guille,* supra, 196 Conn. 267–68. Our reading of *Guille* comports with the Supreme Court's description of the opinion offered by the court in *Amodio*: "[S]upport orders can be modified in spite of preclusion provisions when those provisions are ambiguous . . . and when the rights of interested parties are not protected adequately by the separation agreement." (Citation omitted.) *Amodio* v. *Amodio,* supra, 247 Conn. 730, citing *Guille* v. *Guille,* supra, 267.

In the present case, the record provides no indication that the parties' minor children were represented by counsel during the parties' negotiation of the separation agreement or, indeed, at any time during the dissolution proceedings. Although the guardian ad litem for the children signed the completed agreement, his approval and acknowledgement of the agreement pertained only "to the custody, visitation and counseling issues pertaining to the minor children." Furthermore, the motion to modify the agreement was brought on behalf of the defendant only and was based solely on the change in primary physical custody of the children. The defendant made no representation to the court that the children's support needs had been affected by the change in custody. The case therefore is factually distinguishable from *Guille* in this important regard, as the motion to modify the agreement in *Guille* was brought by counsel

for the parties' minor children and on their behalf. See *Guille* v. *Guille,* supra, 196 Conn. 262. In light of the preceding, we conclude that the circumstances like those in *Guille,* under which children asserted their right to parental support, causing the court to determine that a facially nonmodifiable provision of a separation agreement could nonetheless be modified, are not present in this case.

We next analyze the terms of the contractual agreement that was incorporated into the decree at the time of the dissolution of the marriage. As we have stated, we review the trial court's decision interpreting the separation agreement incorporated into the dissolution judgment according to the general principles of contract interpretation. See *Issler* v. *Issler,* supra, 250 Conn. 234–35. The agreement "must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Eckert* v. *Eckert,* supra, 285 Conn. 692. The intent of the parties "is to be ascertained by a fair and reasonable construction of the written words" whereby the language of the contract is "accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) Id. Applying these interpretive principles to the separation agreement, we conclude, contrary to the conclusion of the court, that the provision covering unallocated alimony and child support was nonmodifiable.

The language of paragraph 2.1 of the agreement, which bears the parties' emphasis, is clear and not ambiguous: "THE UNALLOCATED PERIODIC [ALIMONY] AND CHILD SUPPORT SHALL BE [NONMODIFIABLE] IN AMOUNT AND TERM OF PAYMENTS EXCEPT AS NOTED ABOVE." The only exceptions to

the nonmodifiability of the alimony and support contained in the agreement precede the capitalized language in paragraph 2.1: the plaintiff's death, remarriage or cohabitation. The intent of the parties to make the unallocated alimony and child support nonmodifiable, except in these circumstances, is clear from the language of the agreement.

The court cited two additional provisions of the agreement in support of its interpretation that the parties had intended the alimony and support order to be modifiable. The court referenced paragraph 2.5, which provides: "If in the future the amount of alimony changes and/or terminates and a determination needs to be made for child support, the court shall determine the amount in accordance with the child support guidelines." Paragraph 2.7 of the agreement, also cited by the court, provides in relevant part: "In the event of the termination of unallocated alimony and child support provided in [paragraph] 2.1 hereof during the minority of any child, the parties shall determine the amount of child support to be paid by the [defendant] for the support of the minor child or children . . . ." The court concluded that these provisions indicated that the parties foresaw the potential that the agreement would require modification as to alimony and support. We cannot agree.

Although the language of these paragraphs alludes to possible future modifications in alimony and support, there is nothing in the language to suggest that the parties intended those potential modifications to result from anything other than the enumerated reasons for modification found in paragraph 2.1, namely, the plaintiff's death, remarriage or cohabitation. Reading the terms of paragraphs 2.5 and 2.7 to mean that the parties intended the unallocated alimony and support order to be modifiable in direct contradiction to the clear language of paragraph 2.1 declaring its nonmodifiability

is akin to supplying terms to the parties' agreement, which is not appropriate under these circumstances. "A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument." *Texaco, Inc.* v. *Rogow*, 150 Conn. 401, 408, 190 A.2d 48 (1963).

The clear and unambiguous language of the agreement forbad future modification of the unallocated alimony and child support order except for certain enumerated reasons, none of which were present. The parties were free in negotiating the terms of the agreement to bargain for a term allowing the order to be modified upon a change in physical custody. They did not do so. We recognize that, as in *Guille*, instances may arise in which a trial court must modify a facially nonmodifiable separation agreement as to child support in order to protect the children's interest in receiving material support from their parents. The court must retain the authority to modify child support orders in accordance with the strong public policy, expressed in our statutory and interpretive case law, that parents support their children. See *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001); see also *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 735, 830 A.2d 228 (2003). Such circumstances are not present here. The defendant provided the court no evidence that the support needs of the parties' minor children were unmet or even diminished as a result of the change in their physical custody, or because of the unallocated order requiring payment to the plaintiff of $1384 per week.

Alimony and child support orders may either be allocated or unallocated. If allocated, some set amount is awarded for each such purpose. If unallocated, the award of the amount to be paid periodically is not designated either as child support or alimony. Because it is unallocated, the benefit to the party charged with

paying is that it is a deduction in its entirety for federal income tax purposes; see *Commissioner of Internal Revenue* v. *Lester*, 366 U.S. 299, 304, 81 S. Ct. 1343, 6 L. Ed. 2d 306 (1961); whereas child support, if allocated, is not deductible. Here, the parties bargained for, and succeeded in incorporating into their divorce decree, a provision making alimony and child support unallocated. The effect of the court's order modifying that award was to transmogrify an unallocated award to an allocated award.

Our courts repeatedly have recognized that "[t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005). This holds just as true in the instance of parties negotiating a settlement agreement that the court approves and incorporates into a marriage dissolution judgment as when the court authors financial and property settlement orders. By way of their comprehensive separation agreement, the parties here divided the property and other assets of their marriage. Among other things, the plaintiff relinquished any claim to an interest in the defendant's business and certain other property. The defendant, in turn, among other things, agreed to pay to the plaintiff an unallocated order of periodic alimony and child support, which was to be nonmodifiable except in the case of her death, remarriage or cohabitation. Given the clear language of the agreement, and on the record before us, we conclude that the court improperly granted the defendant's motion to modify the agreement.

II

The plaintiff next claims that the court improperly denied her motion for contempt and failed to award her reasonable attorney's fees and costs pursuant to

the dissolution judgment. As to the motion for contempt, the plaintiff specifically argues that the court's denial was based in part on its previous incorrect determination addressed in part I of this opinion that the unallocated support order was modifiable. She further claims that although the court found that the defendant was not in compliance with the court's order, it nonetheless failed to award her a reasonable amount of attorney's fees and costs. We address these two aspects of the plaintiff's claim in turn.

The following additional facts are necessary for resolution of the plaintiff's claim. On April 17, 2008, the plaintiff filed a motion for contempt against the defendant. The plaintiff alleged that the defendant wilfully had violated the orders contained in the court's dissolution judgment in that he: (1) failed to maintain life insurance for her and the minor children, (2) failed to sell two properties, (3) filed the motion to modify the unallocated support order on a ground other than those for which the agreement allowed modification and thereby violated her right to timely receive support under paragraph 2.6 of the agreement[6] and (4) failed to pay the $1384 per week since the middle of March as required by the agreement and pursuant to the court's order staying its modification of the unallocated order.[7] The plaintiff sought an order holding him in contempt of court and requiring the defendant to maintain the life

[6] Paragraph 2.6 of the separation agreement provides: "The [defendant] shall take no action for the purpose of defeating the [plaintiff's]] timely right to receive alimony and support, and, in particular, shall take no action to reduce, divert, delay, or defer income for the purpose of reducing, limiting or delaying the [defendant's] alimony and support obligation to the [plaintiff]."

[7] The plaintiff filed her appeal from the court's decision granting the defendant's motion to modify the unallocated alimony and support order on March 17, 2008. On March 19, 2008, she filed a motion for an immediate temporary stay and a permanent stay of the court's order pending the outcome of her appeal. The court granted the stay following oral argument on April 7, 2008.

insurance and to list the properties for sale according to the agreement; "to pay all fees and costs incurred by the plaintiff to defend against his motion to modify, including all [attorney's] fees and costs at trial and on appeal"; to pay the unpaid unallocated support; and to pay the plaintiff's costs for the motion for contempt, including attorney's fees. The plaintiff submitted to the court an affidavit and itemized list of attorney's fees and costs relating to the motion for contempt totaling $9283.75.[8]

The court, *Turner, J.*, held a hearing on the motion on July 8 and 16 and September 23, 2008. In its October 3, 2008 memorandum of decision, the court found that the defendant had failed to maintain the required life insurance and was in arrears in his alimony and support payments. As to the defendant's having filed a motion for modification of the alimony and support order, the court noted that it previously had found a substantial change in circumstances due to the change in the children's custody and held that the "defendant's filing and successful pursuit of the motion to modify was not a wilful violation of the plaintiff's right to timely receive unallocated support." The court found that the defendant had made reasonable, diligent and timely efforts to list and to sell the properties. In sum, the court did not find that the defendant had wilfully violated the court's orders but found that, in certain respects, he was in noncompliance with them. Accordingly, the court denied the plaintiff's motion for contempt in each of its particular specifications. However, the court ordered

---

[8] During the hearing on the plaintiff's motion for contempt, the defendant challenged a number of the itemized fees contained in the plaintiff's affidavit of attorney's fees and costs, arguing that they did not pertain to the motion for contempt. The plaintiff agreed with some of the reductions, acknowledging that the affidavit included some time spent on different motions. It is unclear from the transcript of the hearing exactly which fees the plaintiff agreed were improper; neither does the plaintiff's appellate brief provide an exact accounting.

the defendant to obtain life insurance for the plaintiff and the children, continue to list the properties for sale and to pay the plaintiff in a lump sum the arrearage of $13,508 in alimony and child support. The court denied the plaintiff's request for attorney's fees and costs to defend the defendant's motion to modify the alimony and support order. Finally, on the basis of the defendant's noncompliance with the court's orders, the court granted the plaintiff's request for attorney's fees and costs incurred in filing the motion for contempt, awarding her the sum of $750. The plaintiff subsequently amended her original appeal, which pertained to the court's judgment on the defendant's motion to modify the alimony and support order, to include an appeal of the court's denial from her motion for contempt.

A

The plaintiff argues that pursuant to paragraph 2.1 of the separation agreement, the unallocated alimony and child support award was nonmodifiable except for certain limited reasons. She maintains that the defendant's motion to modify the alimony and support order for a reason other than those outlined in the agreement violated paragraph 2.6 of the agreement, which states in relevant part that the defendant will "take no action for the purpose of defeating the [plaintiff's] timely right to receive alimony and support . . . ." According to the plaintiff, because the court incorporated the separation agreement into its judgment of dissolution, the defendant's motion to modify constituted a wilful violation of the court's order pertaining to alimony and support. She challenges the court's failure to hold thus in its judgment on her motion for contempt.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [defendant] were in contempt of a

court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 590, 823 A.2d 1274 (2003). "[It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 82, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006).

The court's decision denying the plaintiff's motion for contempt with regard to the defendant's seeking modification of the unallocated alimony and support order was based on its previous decision, discussed in part I of this opinion, granting the defendant's motion to modify. The court granted the motion to modify on the basis of its improper conclusion that the agreement was modifiable. The court denied the plaintiff's subsequent motion for contempt, holding that the defendant had not violated wilfully the court's orders in moving for modification of the agreement. To rule on the motion for contempt, the court was required to make factual findings concerning the defendant's actions and whether they constituted wilful violation of a court order. "[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful." *Wilson* v. *Wilson*, 38 Conn. App. 263, 275–76, 661 A.2d 621 (1995). It is not the province of an appellate court to make such factual findings. Accordingly, we reverse the judgment of the trial court denying the plaintiff's motion for contempt limited solely to the court's decision concerning the defendant's actions in seeking to modify the unallocated order of alimony and child support. We remand the case to the trial court for consideration of this portion of the plaintiff's motion for contempt in light of our decision in part I of this opinion.

## B

The plaintiff also challenges the court's award of attorney's fees and costs based on the defendant's non-compliance with the court's orders. She cites paragraph 12.1 of the separation agreement,[9] which provides that a party judged to have failed to meet an obligation under the agreement would be liable to the other party for his or her attorney's fees and costs in enforcing the agreement. She argues that in light of this provision, her affidavit of fees and costs in the amount of $9283.75, the court's determination that the defendant was not in compliance with the court's orders and the fact that the defendant did not challenge the reasonableness of the time expended in bringing the motion for contempt, the court's award of $750 in attorney's fees and costs was insufficient as a matter of law.

The court's judgment with regard to the plaintiff's request for attorney's fees and costs was dependent, at least in part, on its judgment with regard to the plaintiff's motion for contempt. As we stated in part II A of this opinion, the court's judgment on the motion for contempt was based in part on the court's prior decision on the defendant's motion to modify the separation agreement. We, therefore, reverse the judgment as to attorney's fees and costs and remand the case to the trial court for reconsideration of whether, in light of our decision in part I of this opinion, any further award is justified.

---

[9] Paragraph 12.1 of the separation agreement provides: "If it should be determined by a court of competent jurisdiction that a party has failed to perform any obligation imposed on him or her by this Agreement or has breached a covenant contained in this Agreement, said party shall pay the reasonable attorney's fees, court costs and other expenses incurred by the other party to enforce such obligation or covenant as same is contained in this Agreement or as it is incorporated into or made part of any decree of dissolution, divorce or separation."

The judgments are reversed and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.