JAMES J. CAMPBELL *v.* TERRY CAMPBELL
(AC 30944)

Harper, Robinson and Pellegrino, Js.

Argued January 7—officially released May 4, 2010

*Sarah C. Saunders,* for the appellant (defendant).

*Stephen E. Reck,* for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendant, Terry Campbell, appeals from the judgment of the trial court granting a postjudgment contempt citation against the plaintiff, James J. Campbell. The defendant claims that the court improperly (1) denied her request for a continuance, (2) found that the plaintiff had paid alimony to her as ordered and (3) failed to issue an adequate remedy with its finding of contempt. We affirm the judgment of the trial court.

The record discloses the following facts. The parties' marriage was dissolved on October 12, 2007, with a decree that incorporated by reference a written agreement dated May 17, 2007. The agreement provided that "the [plaintiff] shall pay to the [defendant] the sum of $500.00 per month as alimony for a period of one (1) year, commencing as of the date of the dissolution of the marriage of the parties. . . . The [plaintiff] shall execute all documents to effectuate a transfer to the [defendant] of the Dodge Durango vehicle [Durango], free and clear of any loans or encumbrances. The [plaintiff] agrees to pay in full the outstanding loan on the

vehicle in the approximate amount of $14,000.00 . . . ." On February 4, 2009, the defendant filed a contempt citation, claiming that the plaintiff had failed to pay her the alimony as agreed and that he had failed to pay the loan on the Durango. The citation also requested attorney's fees and court costs. The matter was assigned a hearing date of March 9, 2009, and the defendant marked her motion ready to proceed.[1]

On March 6, 2009, the plaintiff, through his counsel, filed an objection to the defendant's contempt citation. The plaintiff asserted that the defendant had agreed to waive any further claim to alimony or payment on the Durango if he were to provide her with a lump sum of $8000 cash. He represented that the Durango had a balance due of approximately $8000 as of March 12, 2008, along with an additional $622.11 in taxes. The plaintiff stated that, pursuant to that agreement, he tendered $8000 in cash to the defendant, as well as $622.11 for the taxes.

On March 9, 2009, after having marked the case as ready, the defendant's counsel requested that the matter be continued for a minimum of one week because the plaintiff intended to offer a defense to the contempt citation. The plaintiff objected to the defendant's request. The plaintiff's counsel stated that the defendant's contempt citation forced his client to cancel a trip to Florida to visit his son in the hospital and that the plaintiff was ready to proceed and have his evidence heard. The court, *Fuger, J.*, denied the defendant's request for a continuance, stating that the defendant had marked the matter as ready and should be ready to proceed, notwithstanding the plaintiff's March 6, 2009 objection.

At the March 9, 2009 hearing, the defendant testified that the plaintiff had not made any alimony payments

---

[1] During the March 9, 2009 hearing, the defendant's counsel confirmed that the matter had been marked ready by her office.

since the date of the divorce decree and that the plaintiff had not paid off the loan on the Durango. She stated that because the plaintiff did not pay off the original car loan, she had to take out an additional loan and refinance the balance. She maintained that she had not received any payments from the plaintiff and that he had told her that he would give her the money after he had sold his house.

At the same hearing, the plaintiff testified that he had paid alimony to the defendant in cash. According to the plaintiff, the defendant requested such an arrangement to avoid paying tax on the alimony payments. The plaintiff also offered the testimony of his business partner, Daniel Thomas, who stated that he had witnessed the plaintiff giving cash to the defendant. The plaintiff also testified as to dates and amounts of alimony he paid to the defendant, and offered bank statements and checks to corroborate withdrawals of cash on those dates. As to the automobile loan, the plaintiff testified that he gave the defendant money to make the payments and that the parties had an oral agreement that a lump sum payment would satisfy his obligation to pay the balance on the loan. According to the plaintiff, the defendant agreed to this arrangement and took out an additional loan for $8000.

After considering the foregoing evidence, the court found that the plaintiff was not in contempt as to the alimony payments because "[t]here [was] corroboration of the payments in cash." As to the payments on the Durango, the court found that the contempt had been proven. The court found that the plaintiff had failed to comply with the car loan provision of the judgment and ordered that he pay the defendant $8000, the amount of her car loan, within thirty days. No interest was awarded. The court explained that "[t]here [was] no independent evidence of any sort of agreement." This appeal followed.

I

The defendant first claims that the court improperly denied her request for a continuance. We disagree.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . [I]f the reasons given for the continuance do not support any interference with [a] specific constitutional right, the [reviewing] court's analysis will revolve around whether the trial court abused its discretion. . . . Decisions to grant or to deny continuances are very often matters involving judicial economy, docket management or courtroom proceedings and, therefore, are particularly within the province of a trial court. . . . Whether to grant or to deny such motions clearly involves discretion, and a reviewing court should not disturb those decisions, unless there has been an abuse of that discretion, absent a showing that a specific constitutional right would be infringed. . . .

"Our Supreme Court has articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on

the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." (Citations omitted; internal quotation marks omitted.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 827–28, 949 A.2d 557 (2008).

In the present case, the defendant marked her motion ready, indicating to the court and to the plaintiff that her intention was to go forward with the matter. It was only on the scheduled hearing date that the defendant asked for a continuance, claiming that the plaintiff's objection to her motion had rendered the case "complex." As the court aptly noted, "[y]ou marked it ready . . . [a]nd now you're complaining that the other side said, okay, we're ready. . . . That shouldn't come as a great surprise to you that things get more complex when the other side weighs in." The plaintiff appeared at the hearing ready to present evidence and brought with him witnesses ready to testify and to defend against the defendant's contempt citation. Also, through counsel, the plaintiff represented that he had cancelled a trip to Florida to visit his sick son in the hospital so that he could attend the hearing. On the basis of the foregoing facts, this court does not find that the trial court abused its discretion in denying the defendant's motion for a continuance.

II

Addressing the second and third claims, the defendant argues that the plaintiff failed to prove that he paid the alimony as ordered and, although the court found that he was in contempt for his failure to pay off the automobile loan, the court failed to issue an adequate remedy. We disagree.

We begin by setting forth our standard of review. "The standard of review in family matters is well settled.

An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 330–31, 983 A.2d 293 (2009).

"An appellant who seeks to reverse the trial court's exercise of judicial discretion assumes a heavy burden. . . . Decision making in family cases requires flexible, individualized adjudication of the particular facts of each case. . . . Trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. . . . This court may not substitute its own opinion for the factual findings of the trial court. . . . The ultimate question on appellate review is whether the trial court could have concluded as it did. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Thus, [a] mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court

is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach,* 113 Conn. App. 318, 330, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

Civil contempt involves the wilful violation of an applicable court order. *Marcil* v. *Marcil,* 4 Conn. App. 403, 405, 494 A.2d 620 (1985). To establish her contempt claim, the aggrieved party must prove by a fair preponderance of the evidence both that the alleged contemnor violated the order and that such violation was wilful. See, e.g., *Tomlinson* v. *Tomlinson,* 119 Conn. App. 194, 216, 986 A.2d 1119 (2010); *Statewide Grievance Committee* v. *Zadora,* 62 Conn. App. 828, 832, 772 A.2d 681 (2001). "[A] finding of contempt depends upon the facts and circumstances surrounding it." *Tufano* v. *Tufano,* 18 Conn. App. 119, 124, 556 A.2d 1036 (1989). Whether ambiguity in an order will preclude a finding of contempt is within the discretion of a trial court. *Sablosky* v. *Sablosky,* 258 Conn. 713, 718, 784 A.2d 890 (2001). Guided by these principles, we turn to the defendant's claims.

As to the second claim, the defendant argues that the court improperly determined that the plaintiff had paid alimony to her as ordered. At the hearing, the plaintiff asserted that he paid alimony to the defendant in cash. He presented the testimony of a witness to corroborate his claim, bank statements listing cash withdrawals from his checking account and copies of checks. Based on the plaintiff's evidence, the court determined that "[t]here [was] corroboration of the payments in cash." Although the defendant asserts that the plaintiff's claims are not credible, it is not the role of this court to substitute our opinion for the factual findings of the trial court. Because there is sufficient evidence to support the court's finding that the plaintiff met his

alimony obligation with cash payments, we cannot conclude that the court's factual findings were clearly erroneous.

As to the third claim, the defendant argues that the court's contempt finding against the plaintiff ordering that he pay $8000 within thirty days for the reimbursement of the car loan was inadequate. According to the defendant, the judgment failed to account for interest and other fees that she was obligated to pay. Nonetheless, she failed to present any specific evidence to the court regarding the loan's interest rate or its terms. Further, the defendant failed to file a motion for articulation requesting a factual basis for the court's decision to award her $8000. "In the absence of a motion for articulation, we read an ambiguous trial record to support, rather than to undermine, the judgment." (Internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 534–35, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). Therefore, on the basis of the record before us, we must conclude that the court was within its discretion to determine that $8000 was a reasonable amount to award the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.