JAMES WOLOSOFF *v.* DOROTHY WOLOSOFF
(AC 25407)
(AC 25478)

Dranginis, Flynn and Bishop, Js.

Argued April 25—officially released September 13, 2005

*Eric R. Posmantier*, with whom, on the brief, was *Andrew P. Nemiroff*, for the appellant (defendant).

*Edward M. Kweskin*, with whom, on the brief, were *John A. Farnsworth* and *Natalie Shteyngarts*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Dorothy Wolosoff, appeals from the judgments of the trial court rendered in favor of the plaintiff, James Wolosoff, on the defendant's post-judgment motions for contempt and for attorney's fees in this dissolution action. On appeal, the defendant argues that the court improperly (1) failed to provide her with an evidentiary hearing, (2) refused to mark a proffered document for identification, (3) denied her motion for contempt and (4) denied her request for attorney's fees under the parties' separation agreement. We agree with the defendant as to her first and second claims and reverse the judgments of the trial court.[1]

The following facts and procedural history are relevant to the defendant's appeals. On April 28, 1988, the

---

[1] We do not need to reach the defendant's third claim, which will be considered on remand.

court rendered judgment dissolving the parties' marriage and incorporating into the judgment their written stipulation. As part of the dissolution, the plaintiff agreed to pay the defendant $125,000 per year in alimony and to provide certain security for its payment. In conjunction with the security arrangement, the plaintiff further agreed to provide a financial statement from his accountant to the defendant each year.[2] The defendant filed a motion for contempt on September 12, 2003, arguing, inter alia, that the plaintiff had failed to provide financial statements since 1995. On October 27, 2003, prior to a hearing regarding the motion, the plaintiff's attorney, Edward M. Kweskin, showed the defendant's attorney, Andrew P. Nemiroff, the plaintiff's 2002 financial statement (October statement), which purportedly detailed the plaintiff's assets and liabilities. The parties entered into a stipulation on that day, in which they agreed that "the plaintiff shall forthwith tender to defendant's counsel a current financial statement in accordance with [paragraph six] of the judgment." Because Kweskin did not have a copy of the statement, he told Nemiroff that he would forward him a copy. Later, when

[2] The judgment contains the relevant provisions: "2. The plaintiff shall pay to the defendant the sum of $125,000 per year in equal monthly installments . . . .

"5. As security for the aforesaid . . . $125,000 annual payments, the plaintiff shall provide the defendant with a mortgage of $1,000,000 on real estate owned by him . . . .

"6. The plaintiff shall provide the defendant through her attorney, Robert Epstein, Esq., with a financial statement from his accountant within 30 days of the completion of the annual statement by the accountant each year that the defendant is entitled to receive said $125,000. In the event that the plaintiff's net worth as shown on said financial statement shall fall below $25,000,000, and for so long as his net worth falls below $25,000,000, the plaintiff shall furnish the defendant with an additional collateral of $1,000,000. In such event, when the plaintiff's net worth goes above $25,000,000, then the plaintiff would have the right to reduce the collateral to $1 million on the same terms and conditions as aforesaid. For so long as the lien was $2,000,000, the plaintiff would have the same right to substitute cash or cash equivalents for any portion thereof."

Kweskin discovered that Nemiroff intended to allow the defendant to review the statement, he refused to turn it over, and, on November 19, 2003, the plaintiff filed a motion for a clarification or modification of the judgment. On November 20, 2003, the defendant responded with a motion for contempt and sanctions on the basis of the plaintiff's failure to submit the financial statement to her in accordance with the terms of the judgment and their October 27, 2003 stipulation.

The court, *Hon. Stanley Novack*, judge trial referee, held a hearing on February 20, 2004, regarding the plaintiff's motion for clarification. At the hearing, the court denied the plaintiff's motion for clarification and modification, and ruled that the plaintiff must submit the October statement to the defendant through counsel. The court stated: "Now that I have clarified that there is no reason why you can't supply him with the statement and you should do so forthwith. . . . The motion for clarification is denied. . . . What I said is what I've also ordered that twenty-one days from now or earlier, [the plaintiff] should furnish the last financial statement to Mr. Nemiroff to share with his client." Following the court's order, the plaintiff submitted a revised 2002 financial statement (April statement), which differed from the October statement shown to Nemiroff. Simultaneously, the plaintiff also submitted a statement for the calendar year 2003. Significantly, both statements were in summary form. Unlike the October statement, which initially was proffered but then withdrawn by the plaintiff, the later offered statements indicated gross values for the plaintiff's assets and liabilities without any indication of the identification of any of the claimed assets.

Upon receipt of the summary statement, the defendant renewed her motion for contempt, claiming that the April statement and the 2003 statement did not comport with the terms of the judgment or the October,

2003 stipulation. On April 5, 2004, the court, *Winslow, J.,* heard oral arguments on the defendant's motion for contempt. During the argument, the defendant made an offer of proof regarding the facts and circumstances surrounding the signing of the October, 2003 stipulation. The defendant also attempted to introduce documentary evidence in the form of financial statements submitted by the plaintiff prior to 2002. The record reflects that the court concluded that the judgment and October, 2003 stipulation were unambiguous and that the plaintiff had complied with their terms as a matter of law.

The court stated: "The document that was called for to be provided is set forth in paragraph six of the judgment, and it speaks for itself. Financial statement from his accountant within thirty days of the completion of the annual statement by the accountant here, that the defendant is entitled to receive said $125,000. . . . It simply is a financial statement from the accountant prepared within thirty days of the annual financial statement. There's no specificity. It does not say substantially in the form of whatever prior financial statement that has been produced. . . . The—the court finds that the form presented to the defendant in this matter satisfies the judgment and the order of this court, and for that matter, the order if it was one, from Judge Novack, although I have to question whether it was an order from Judge Novack based on the transcript. . . . [The April statement] meets the requirements of the judgment on its face." The court later stated: "I've made a ruling essentially that is a matter of law at this point as to whether a particular document complies with the rule of the court, so you can—the essential question is does the financial statement that has been proffered comply with the order of the Court that such a financial statement be proffered."

After the ruling, the defendant attempted to call Kweskin to testify regarding the circumstances sur-

rounding the October, 2003 stipulation and attempted to have the October statement marked for identification. The court denied both of the defendant's requests. Subsequently, the court, *Hon. Stanley Novack*, judge trial referee, heard the defendant's motion for attorney's fees and, on the basis of Judge Winslow's ruling on the defendant's motion for contempt, denied the motion. The defendant has appealed from each of the judgments.

I

At the outset, we note that the plaintiff claims on appeal that the issues raised by the defendant are moot. He makes that claim on the ground that because it is now calendar year 2005 and the financial statements for the calendar years 2002 and 2003 were intended to assure adequate security for the payment of alimony in the years following the submission of each of the financial statements for those years, there is no practical relief this court can presently afford the defendant.

"Mootness presents a circumstance wherein the issue before the court has been resolved or [has] lost its significance because of a change in the condition of affairs between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Hartney* v. *Hartney*, 83 Conn. App. 553, 565–66, 850 A.2d 1098, cert. denied, 271 Conn. 920, 859 A.2d 578 (2004). If we assume that each financial statement was to provide security for the payments due for each calendar year, then we agree that the question of whether the October statement or the April statement complied with the judgment has become moot. The

defendant claims that the security requirement as set forth in the dissolution judgment need not be read as relating only to each year, but rather that it can be viewed as a cumulative responsibility.

The defendant asserts, additionally, that even if the issue is moot, the court has subject matter jurisdiction because the issue she raises is capable of repetition and yet likely to evade review. We agree.

"We note that an otherwise moot question may qualify for review under the capable of repetition, yet evading review exception. To do so, however, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *Concetta* v. *Stamford*, 246 Conn. 281, 295–96, 715 A.2d 756 (1998).

The facts presented by these appeals are apt for application of the exception to the mootness doctrine. Although the plaintiff has an annual alimony obligation and a concomitant security requirement, it is apparent from the date of the judgment on the defendant's motion for contempt that unless we decide the issue raised on appeal, the parties will not be able to obtain appellate review of the judgment regarding the nature of the ongoing financial disclosure the marital dissolution judgment requires. The underlying issue regarding

which form is required for the judgment is likely to evade our review, is likely to recur and is a matter of public importance. Thus, we conclude, the court has subject matter jurisdiction.

II

The defendant argues that the court improperly failed to conduct an evidentiary hearing as to the parties' intent regarding financial disclosure as set forth in the marital dissolution agreement and the later October, 2003 stipulation.

"An agreement between divorced parties . . . that is incorporated into a dissolution decree should be regarded as a contract. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings. . . . [Where] . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 336–37, 835 A.2d 111 (2003).

As an initial inquiry, we must first consider whether the language in the dissolution judgment and in the October 27, 2003 stipulation regarding the requirements of financial disclosure by the plaintiff was ambiguous.

"Whether a contractual provision is ambiguous presents a question of law" and therefore is subject to de novo review. *LMK Enterprises, Inc.* v. *Sun Oil Co.*, 86 Conn. App. 302, 306, 860 A.2d 1229 (2004). Our review of the dissolution judgment supports the defendant's argument that the term "financial statement" is not self-evident and is, therefore, ambiguous. Neither the dissolution decree nor the October, 2003 stipulation contains a definition of the term, and we conclude that there is a reasonable basis for differences of opinion as to its exact definition and exact form required for compliance with the judgment and stipulation. The ambiguity is underscored by the parties' respective arguments regarding the form of the financial statement required by the contract as well as the differing versions supplied by the plaintiff since the original dissolution. Although the defendant contended that the financial statement contemplated by the parties included detailed information specifying the nature and identity of the plaintiff's assets and liabilities, the plaintiff argued that the term "financial statement" merely required a written summary of his assets and liabilities without detailing any specific assets or liabilities.

"Our conclusion, therefore, that . . . the agreements were ambiguous as to the parties' intent . . . has two consequences. First, it permits the trial court's consideration of extrinsic evidence as to the conduct of the parties. . . . Second, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact that is subject to reversal on appeal only if it is clearly erroneous. . . . We construe a contract in accordance with what we conclude to be the understanding and intention of the parties as determined from the language used by them interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . The intention of the parties manifested by their

words and acts is essential to determine the meaning and terms of the contract and that intention may be gathered from all such permissible, pertinent facts and circumstances." (Citations omitted; internal quotation marks omitted.) *Poole* v. *Waterbury*, 266 Conn. 68, 97, 831 A.2d 211 (2003). In light of our conclusion that the dissolution decree and stipulation contain ambiguous terms, we conclude that the court should have allowed the defendant to introduce evidence relevant to the parties' intent in using the term financial statement in the dissolution judgment as well as in the later October, 2003 stipulation.

III

The defendant next argues that the court improperly failed to mark the October statement for identification. The following additional facts are relevant to our consideration of that claim. During the plaintiff's argument to the court, he provided the court with a copy of the October statement, the April statement, and the 2003 statement later provided by the plaintiff to the defendant. The record reflects that none of the documents was marked for identification, nor were any of them made full exhibits at that time. After the defendant argued to the court, the court ruled that the April statement met the requirements of the dissolution judgment and the parties' October, 2003 stipulation. Following the ruling, the defendant asked to make an evidentiary record, including calling Kweskin as a witness and having the statements at issue entered as full exhibits. The court allowed the defendant to make an offer of proof to preserve his appellate record and stated that the defendant could have the exhibits marked for identification only. The court then marked the April statement and the 2003 statement as full exhibits but refused to mark the October, 2003 statement as a full exhibit or for identification purposes.

"The right to have a proffered exhibit marked for identification is indeed a broad one. An object or document excluded from evidence should be marked by the trial court as an exhibit for identification in order to preserve it as part of the record and to provide an appellate court with a basis for review. . . . A trial court's refusal to permit documents to be marked as exhibits for identification is manifest error. . . . In *Duncan* [v. *McTiernan*, 151 Conn. 469, 470, 199 A.2d 332 (1964), our Supreme Court] stated that [t]he [trial] court had no discretion to refuse such a request, because to allow such discretion would permit a trial judge to deprive an aggrieved party of a proper record for [an] appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Onofrio*, 179 Conn. 23, 34, 425 A.2d 560 (1979).

The plaintiff argues, nevertheless, that because the court had made its ruling and the evidence had closed before the defendant sought to have the October statement marked for identification, the court did not abuse its discretion in not marking the statement for identification. In the alternative, the plaintiff argues that the court's refusal to mark the statement was harmless because the court permitted the defendant to mark the April statement for identification, and the April statement is in the same summary form as the October statement.

We note, however, that the court issued its ruling prior to the defendant's request to have the October statement marked for identification and that immediately before the court denied the defendant's request to mark the October statement for identification, the court did permit the April statement and the 2003 statement to be admitted as full exhibits even though neither of those documents had been either marked for identification or admitted as full exhibits prior to the court's ruling. We conclude that because the court continued

to receive evidence following its ruling, it incorrectly denied the defendant the opportunity to have the October statement marked for identification purposes. We further conclude that the court's failure to mark the exhibit was harmful to the defendant, as the failure to have the statement available for review has effectively denied the defendant the opportunity to demonstrate that its contents are materially different from the content of the April statement and consistent with the intent of the parties in forming their marital dissolution agreement and in reaching their October, 2003 stipulation.

IV

The defendant also argues that the court improperly denied her attorney's fees because the plaintiff was in default of the dissolution judgment. It is plain from the record that in denying the defendant's motion for attorney's fees, the court, *Hon. Stanley Novack*, judge trial referee, was influenced by Judge Winslow's denial of the defendant's motion for contempt. In light of our determination regarding the court's evidentiary rulings, we believe that justice requires a rehearing on the motion for counsel fees.

The judgments are reversed and the case is remanded for an evidentiary hearing on the defendant's motion for contempt and for a hearing on the defendant's motion for counsel fees.

In this opinion the other judges concurred.