******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRIAN YOMTOV *v.* SALLY YOMTOV
(AC 35440)

Alvord, Mullins and Lavery, Js.

*Argued May 28—officially released August 19, 2014*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. Stanley Novack, judge trial referee [dissolution judgment]; S. Richards, J. [motion for credit].)

*Barbara M. Schellenberg*, with whom, on the brief,

was *Jocelyn B. Hurwitz*, for the appellant (plaintiff).

*Charles D. Ray*, with whom were *Heidi E. Opinsky* and, on the brief, *Lee Friend Lizotte*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Brian Yomtov, appeals from the trial court's postjudgment order denying his motion for a credit toward the alimony and child support obligations that he had been ordered to pay to the defendant, Sally Yomtov, pursuant to a dissolution judgment. The plaintiff claims that the court incorrectly interpreted the term "gross annual income from employment" in the parties' separation agreement by improperly equating the income of his limited liability company with that actually received by him in his individual capacity after he deducts his company's expenses. We agree and reverse the judgment of the trial court.

The record reveals the following facts. The parties were married on April 8, 2006, and had two children. Their marriage was dissolved by the court, *Hon. Stanley Novack*, judge trial referee, on November 22, 2011, at which time their separation agreement (agreement) was incorporated by reference into the dissolution decree. See General Statutes § 46b-66. The plaintiff is a chiropractor and the sole proprietor of Advanced Chiropractic and Wellness, LLC, a limited liability company.

The following sections of the agreement are relevant to our disposition of this appeal. Section 3.1 of the agreement provides in relevant part: "Commencing December 1, 2011, the [plaintiff] shall pay the [defendant] forty-five percent (45%) of his gross annual income from employment, as defined in [§] 3.2 herein, as and for unallocated alimony and child support." Section 3.2 of the agreement provides: "The term 'gross annual income from employment' as used in [article three of the agreement] with regard to income of both parties is defined for the purpose hereof to mean income actually received by the [plaintiff] or the [defendant] and income which he/she has a right to receive in each calendar year from any and all sources derived. Without limiting the generality of the foregoing, 'gross annual income from employment' shall include earned, taxable and nontaxable income and in particular, all income from draws, wages, salaries, insurance payments, insurance reimbursements, cash payments, sales of vitamins, pillows and other products, bonuses, pensions, consulting or other fees, commissions, and compensation for or by reason of past, present or future employment or self-employment, in whatever form received, including payments in cash, in kind, stock or otherwise, income from one or more businesses, net rental income, annuities, life insurance contracts, royalties, and partnership distributions. In the event either party's employer shall be a Subchapter S corporation or taxed as a partnership, and that party shall be a stockholder of said corporation, the party's 'gross annual income from employment' from said corporation shall be his/her income as distributed and he/she shall not be entitled to deductions for business expenses as

made by the corporation. Losses for any Subchapter S corporation shall not reduce that party's 'gross annual income from employment' except to the extent that such losses are actually realized by him/her."

On May 22, 2012, the plaintiff filed a postjudgment motion for a credit toward his alimony and child support obligations to the defendant, alleging that "[he] is entitled to a credit in the amount of $6795.17 [from the defendant] as a result of a misunderstanding of his obligation to the defendant [to pay unallocated alimony and child support] and resulting overpayment from December, 2011 to April, 2012." The plaintiff detailed that, specifically, "while the [agreement] requires the plaintiff to make an excess support payment to the defendant to the extent that 45% of *his gross annual income from employment* exceeds $5000 per month, the plaintiff made excess payments to the defendant based on a mistaken belief that he was obligated to make an excess support payment to the extent that 45% of the *gross revenue* received by his company, Advanced Chiropractic and Wellness, LLC, exceeded $5000 per month." (Emphasis in original.) The defendant objected to the plaintiff's motion arguing that the term "gross annual income from employment" is specifically and broadly defined in § 3.2 of the parties' agreement and that deductions to the plaintiff's gross annual income is silent with respect to his business income.

A hearing on the plaintiff's motion was held over several days, and on February 1, 2013, the court, *S. Richards, J.*, denied the plaintiff's motion. Specifically, the court determined: "[T]he court agrees with the defendant's contention that the definition of the term 'gross annual income from employment' is to be interpreted broadly and, pursuant to said section, without limitation, and omits any language whatsoever that could be construed to mean that the plaintiff has the right to deduct the plaintiff's business expenses incurred in the operation of [his company]. The defendant propounds that [§] 3.2 [of the agreement] contains absolutely no words that purport to permit such a deduction from the either party's gross annual income from employment, and the court agrees. In stark contrast, unlike the preceding sentence, the very next full sentence that follows the sentence that defines the term 'gross annual income from employment' explicitly and unambiguously prohibits a party from deducting business expenses. It reads, in its entirety: 'In the event either party's employer shall be a Subchapter S corporation and taxed as a partnership, and that party shall be a stockholder of said corporation, the party's 'gross annual income from employment' from said corporation shall be his/her income as distributed and he/she shall not be entitled to deductions for business expenses as made by the corporation.'

"What the court finds is that the language of [§] 3.2 comprises . . . wide expanses of categories of words used to describe the kinds and sources of income that will be factored into [a certified public accountant's] computation of the plaintiff's income and is virtually all encompassing without any limitations, exceptions, exclusions, conditions or other qualifiers. Thus, this court will not engage in some sort of manipulation on the order of verbal acrobatics in order to incorporate language that simply does not exist on the face of the separation agreement so that [the accountant] can subtract the business expenses of [the plaintiff's company] from the plaintiff's income as the court finds that the separation agreement is unambiguous. The definition at issue here clearly and unequivocally describes the meaning of a party's 'gross annual income from employment' for purposes of determining unallocated alimony and child support, and, as such, the words contained therein have been given their common and ordinary meaning by this court."[1]

The sole issue is whether the court properly determined that, under § 3.2 of the agreement, the plaintiff's "gross annual income from employment" is the total revenue of his limited liability company, and not the income actually received by the plaintiff from his limited liability company after deducting the company's expenses. We begin by setting forth the applicable standard of review and principles of law. "It is firmly established that a separation agreement incorporated into a dissolution decree is regarded and construed as a contract. *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008); *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999); *Breiter* v. *Breiter*, 80 Conn. App. 332, 336–37, 835 A.2d 111 (2003). . . . [T]he construction of a written contract is a question of law requiring plenary review." (Citation omitted; internal quotation marks omitted.) *Flaherty* v. *Flaherty*, 120 Conn. App. 266, 268–69, 990 A.2d 1274 (2010).

Our plenary review of the agreement is guided by the following principles of contract interpretation: "Our Supreme Court has instructed that interpretation of a separation agreement incorporated into a dissolution decree 'is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect

according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.' . . . *Eckert* v. *Eckert*, [supra, 285 Conn. 692]; see also *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009); *Danehy* v. *Danehy*, [118 Conn. App. 29, 33, 982 A.2d 273 (2009)]." *Nassra* v. *Nassra*, 139 Conn. App. 661, 667, 56 A.3d 970 (2012). "Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Eckert* v. *Eckert*, supra, 692.

We agree with the plaintiff that the court's determination is contrary to the plain and unambiguous language of the agreement. It is well settled in Connecticut that "[a] limited liability company is a distinct legal entity whose existence is separate from its members." *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008); see also General Statutes § 34-134; *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 214–15, 55 A.3d 583 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013). The parties to the agreement were the plaintiff and the defendant, not the plaintiff's limited liability company and the defendant. As indicated, § 3.2 of the agreement defines "gross annual income from employment" in relevant part as "income *actually received by the* [*plaintiff*] . . . and income which [he] has a right to receive in each calendar year from any and all sources derived . . . [and] shall include earned, taxable and nontaxable income and in particular, all income from draws, wages, salaries . . . [and] income from one or more businesses . . . ." (Emphasis added.) This language is clear that the term "gross annual income from employment" is defined as income actually received by the plaintiff, and not the income actually received by his limited liability company.

Furthermore, "[w]hen construing the contract, we are mindful that [t]he contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . In giving effect to all of the language of the contract, the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citation omitted; internal quotation marks omitted.) *Flaherty* v. *Flaherty*, supra, 120 Conn. App. 270. An interpretation of the agreement that equates the plaintiff's income with that of his limited liability company renders portions of § 3.2 contradictory and superfluous; namely, that the plaintiff's "gross annual income from employment" shall include "all income from draws" and "income from one or more businesses." We further

note that such an interpretation renders other portions of the agreement superfluous and contradictory, such as section 10.1, which distinguishes the plaintiff's individual income tax liability from his business income tax liability.[2]

Moreover, the circumstances of the parties at the time of the dissolution do not support the contention that the plaintiff's income is that of his limited liability company. Generally, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Nassra* v. *Nassra*, supra, 139 Conn. App. 667. The plaintiff's financial affidavit at the time of the dissolution, referenced throughout article eight of the agreement, and relied upon by Judge Novack in approving the parties' alimony and child support arrangement, indicates that the plaintiff's weekly employment income is what he receives from his limited liability company after accounting for all expenses of the business. Accordingly, a plain and unambiguous reading of the agreement in the light of the circumstances connected with the transaction, does not support the court's determination that the income of the plaintiff's limited liability company is the basis for calculation of the plaintiff's "gross annual income from employment," as defined in § 3.2 of the agreement. Rather, a fair and reasonable construction of the written words allows the plaintiff to deduct his company's expenses before calculating his "gross annual income from employment."

The court's reliance on the subchapter S language of § 3.2 of the agreement as evidence that the agreement "explicitly and unambiguously prohibits a party from deducting business expenses" was improper. The plaintiff's company is not, and never was, a subchapter S corporation; rather, his business was a limited liability company at the time of the marriage dissolution, and remained a limited liability company at the time of the hearing on his motion. Nonetheless, the defendant argues that the court's reliance on the subchapter S language of the agreement was proper. Specifically, she asserts that, first, "[t]here is nothing in [the] definition [of 'gross annual income from employment'] that purports to allow either party to deduct business expenses (or any expense for that matter) in order to determine their 'gross annual income from employment.' There is no language in the agreement's definition of 'gross annual income from employment' that allows the plaintiff to treat himself as a separate and distinct entity from his business . . . ." Second, at oral argument before this court, the defendant asserted that the subchapter S language was incorporated into the agreement "as an example of what the parties intended."

The defendant's arguments are without merit. "In interpreting contract terms, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Wolosoff* v. *Wolosoff*, 91 Conn. App. 374, 381, 880 A.2d 977 (2005). There is no language in the agreement indicating that the legal status of the plaintiff's limited liability company is to be disregarded for the purpose of the calculation of the plaintiff's income; on the contrary, as detailed previously, a plain reading of the terms in light of the circumstances of the parties at the time of dissolution indicates the contrary. Accordingly, the court's interpretation is contrary to the common, natural, and ordinary meaning of the agreement's words and is unreasonable.[3]

The judgment is reversed and the case is remanded with direction to render judgment granting the plaintiff's motion for a credit toward alimony and child support and for a further proceedings to determine the amount of credit owed to the plaintiff.

In this opinion the other judges concurred.

[1] Section 3.4 B of the agreement provides in relevant part: "For the duration of the unallocated alimony and support period, at six (6) month intervals, the [plaintiff] shall deliver to the [defendant] a computation describing the total amount of his 'gross annual income from employment', as defined above, received during the six (6) months immediately preceding the date of such statement. The [plaintiff] shall also calculate and deliver to the [defendant] at the same time a computation describing the total amounts which she should have received during the preceding six (6) months pursuant to the terms of this Agreement. Upon the [defendant's] request, such computations as are required under this Agreement shall be certified by a certified public accountant as being accurate and correct and truly reflective of the [plaintiff's] gross income from employment for the previous six (6) months as well as the [plaintiff's] income from all sources as the same is herein defined for the period in question. The parties shall divide the cost of the auditor equally. . . ."

[2] Section 10.1 of the agreement provides in relevant part: "In the event of an audit or other action pertaining to the parties' income tax liability or the [plaintiff's] business income tax liability, the [plaintiff] shall provide his own counsel and, if necessary, accountant and he shall pay for the costs of the same."

[3] We also reject the defendant's argument analogizing the tax treatment of limited liability companies to that of subchapter S corporations under the Internal Revenue Code. Our principles of contract interpretation do not support the defendant's contention that federal tax law can be an indicator of the parties' intent. Further, we find the defendant's reliance on *Krane* v. *Krane*, 99 Conn. App. 429, 430–32, 913 A.2d 1143 (2007), unpersuasive; namely, while true that, when reviewing a separation agreement with subchapter S language very similar to that of the agreement at issue here, this court affirmed the trial court's decision that the party at issue may not deduct the business expenses of his corporation before calculating his gross annual income from employment, in *Krane* the party's corporation was actually a subchapter S corporation.