******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JENNIFER BOYD-MULLINEAUX *v.*
DANIEL MULLINEAUX
(AC 43509)

Bright, C. J., and Alvord and DiPentima, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant had previously been dissolved, appealed to this court from the decision of the trial court denying her postdissolution motion for contempt as to a claimed arrearage for unallocated alimony and child support, claiming that the court incorrectly determined that she was not entitled to receive a percentage of profit distributions received by the defendant from his purchased membership interest in a company, P Co. The trial court found that the defendant received income from two sources: commission income as an employee of C Co., and distributions as a member of P Co. The court denied the plaintiff's motion for contempt, concluding that the distributions that the defendant received from P Co. were not included in the defendant's gross annual earned income from employment, as defined in the parties' separation agreement. *Held* that the trial court properly denied the plaintiff's motion for contempt because the distributions received by the defendant as a member of P Co. were not included in the definition of gross annual earned income from employment as defined in the parties' separation agreement: the evidence supported the court's conclusion that the distributions were not derived from the defendant's employment with C Co., including expert testimony that the defendant had paid for an equity interest in P Co., and that the income he received derived from that interest; moreover, there was no provision in the members' agreement, which concerned distributions from P Co., that required members of P Co. to be employed by C Co., the defendant purchased his membership interest in P Co. postdissolution, and he receives distributions on that investment, and the separation agreement provides that all income received by the defendant due to his investment of certain assets shall not be considered in the definition of gross annual earned income from employment.

Argued January 19—officially released April 6, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Emons, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *M. Moore, J.*, denied the plaintiff's motion for contempt, and the plaintiff appealed to this court. *Affirmed.*

*Gary I. Cohen*, for the appellant (plaintiff).

*Olivia M. Eucalitto*, with whom, on the brief, was *Gaetano Ferro*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Jennifer Boyd-Mullineaux, appeals from the decision of the trial court denying her postjudgment motion for contempt as to a claimed arrearage for unallocated alimony and child support. She claims that the court incorrectly determined that, according to the parties' separation agreement, she was not entitled to receive as unallocated alimony and child support a percentage of profit distributions received by the defendant, Daniel Mullineaux, from his purchased membership interest in a company. We affirm the judgment of the trial court.

The following facts and procedural history are relevant. The marriage of the parties was dissolved by the court, *Emons, J.*, in 2013, and the dissolution judgment incorporated by reference the parties' separation agreement. Article III of the separation agreement provides in relevant part that the defendant shall pay the plaintiff unallocated alimony and child support based on percentages of his "Gross Annual Earned Income from Employment" (earned income from employment). (Internal quotation marks omitted.)

Throughout the relevant time period, the defendant was employed as a managing director by an investment company, Liquidity Finance, LLC (LLC). In 2014, the defendant accepted an appointment to become a member of Liquidity Finance, LLP (LLP), and, over time, he paid approximately $624,000 for his interest in the LLP. He received distributions as a member of the LLP and continued to earn commission income as an employee of the LLC. The defendant did not include the distributions he received as a member in his earned income from employment when calculating his support obligations. In June, 2018, the plaintiff filed a postjudgment motion for contempt seeking an order of arrearage. In this motion, she argued that she was entitled to an arrearage because the distributions were related to the defendant's employment, and, therefore, were included in the definition of earned income from employment contained in the parties' separation agreement. The defendant filed an objection in which he argued that the income in dispute was not earnings "related to [his] employment," and, therefore, was properly excluded from his earned income from employment. (Internal quotation marks omitted.)

Following an evidentiary hearing, the court, *M. Moore, J.*, denied the motion for contempt. The court concluded that the distributions that the defendant received as a result of his membership in the LLP, which he had expended significant funds to purchase, were not included in the definition of earned income from employment as defined by the parties' separation agreement. The plaintiff filed a motion for "reconsideration, correction, and/or clarification . . . ." In response, the

court clarified that it had ruled on the plaintiff's June, 2018 motion for contempt, and it denied the plaintiff's request to reconsider its order. This appeal followed.

The plaintiff claims that the court incorrectly concluded that the distributions, which the defendant received as a result of his purchased interest in the company that employed him as a manager, were not included within the definition of earned income from employment in the separation agreement.[1] She contends that the distributions paid to the defendant as a result of his membership interest in the LLP must be included in his earned income from employment because the distributions arise from a source related to the services rendered by the defendant by way of past, current, or future employment. The defendant argues that the distributions were not derived from his employment with the LLC, and, therefore, the court correctly determined that they were excluded from his earned income from employment. We agree with the defendant.

The following principles guide our analysis. "Our interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

In the present case, both parties agree that the separation agreement is clear and unambiguous as to the definition of earned income from employment contained in paragraph 3.5, but disagree as to whether the distributions are included within that clear definition. "If the language of a contract is clear and unambiguous, the intent of the parties is a question of law, subject to plenary review." Id.

We agree that the separation agreement clearly and unambiguously defines earned income from employment as "any and all earnings of any nature whatsoever

actually received by the [defendant] in the form of cash or cash equivalents, or which the [defendant] is entitled to receive, from any and all sources relating to the services rendered by the [defendant] by way of his past, current or future employment . . . ." The separation agreement specifies that earned income from employment includes but is not limited to: "[S]alary and bonus, contract payments, commission payments, severance payments, and voluntary payments made to qualified and [nonqualified] retirement plans for his benefit, and if applicable, disability benefits. All deferred compensation including, but not limited to, deferred cash compensation, stock grants, stock units, and stock options shall be deemed [earned income from employment] in the year in which the [defendant] receives such items." The separation agreement expressly excludes from earned income from employment "[c]apital [g]ains, interest and dividends, and all other income earned by the [defendant] due to his investment of assets distributed to him in connection with this dissolution proceeding . . . ."

As found by the trial court, the defendant received income from two sources: commission income as an employee of the LLC, and distributions as a member of the LLP. These moneys were received by the defendant pursuant to the terms of two separate agreements, both of which were admitted into evidence at the hearing on the motion for contempt as full exhibits, specifically, a service agreement, which governed the defendant's employment with the LLC, and a members' agreement, which concerned the distributions from the LLP. The parameters of the defendant's employment with the LLC, as managing director, were set forth in the service agreement, which provided a method of calculation of the defendant's compensation for his services. The members' agreement, which identified the defendant as an initial member of the LLP, defined "[m]embers" as "any persons who are from time to time admitted as members of the LLP in accordance with the terms of this [a]greement and the [United Kingdom Limited Liability Partnerships Act 2000])." The members' agreement required members, also referred to as initial members, to have made a specified capital contribution to the LLP, and it provided that residual profits were to be shared among the members in their "[r]elevant [p]roportion . . . ."

The evidence presented at the hearing supported the court's conclusion that the distributions received by the defendant from the LLP were not included in earned income from employment because they were not properly included as "any and all earnings of any nature whatsoever actually received by the [defendant] . . . or which [the defendant] is entitled to receive, from any and all sources relating to the services rendered by the [defendant] by way of his past, current or future employment . . . ." The defendant's expert witness, Mark Harrison, a certified public accountant, testified

that the formulaic calculation set forth in the service agreement of how the defendant was to be paid for his services as an employee did not change after he purchased an equity interest in the LLP.[2] Harrison further testified that, pursuant to the members' agreement, the defendant paid for an equity interest and that "the income that he receives by virtue of stock ownership is solely as a result of an equity interest he acquired by deploying his own capital . . . ." Contrary to the plaintiff's contention, the defendant's testimony on cross-examination that he was receiving distributions as a result of his membership in the LLP and that no one other than employees of the LLC were receiving distributions as of the time of the hearing, does not demonstrate that his distributions are related to his employment. Rather, this testimony merely indicates the source of the income, namely, his status as a member of the LLP, and it provides details on the current composition of its members.

The plaintiff raises several arguments in support of her contention that the profit distributions received by the defendant arise from his employment, but none of these arguments demonstrates that the distributions the defendant receives as a member of the LLP are related to his employment as a manager of the LLC. The plaintiff contends that the defendant's obligations as a member pursuant to schedules 2 and 3 of the members' agreement are substantially the same as his obligations as a manager pursuant to paragraph 2 of his service agreement. These two agreements, she claims, are intended to enhance the defendant's cash income from the services he renders to the LLC and the LLP as both an employee and a partnership member. The claimed similarity between the documents does not exist.[3] There is no provision in the members' agreement requiring members to be *employed* by the LLC, and the plaintiff does not refer to any provision purporting to establish such a requirement. Specifically, paragraph 16.1 of the members' agreement, which pertains to the admission of new members, does not require employment by the LLC as a prerequisite for becoming a member, but, rather, it provides that "[a]ny person may at any time be admitted as a [m]ember by agreeing to contribute such amount of [c]apital . . . ."

The defendant purchased his membership interest in the LLP postjudgment, and receives distributions as a return on that investment. Paragraph 3.5 of the separation agreement clearly provides that "all other income earned by the [defendant] due to his investment of assets distributed to him in connection with this dissolution proceeding shall not be considered in the definition of [earned income from employment] herein." The court correctly concluded that the return on the defendant's investment of the purchased membership interest in the LLP is not related to his employment with the LLC, and, therefore, is excluded from the definition of earned

income from employment.

The plaintiff further argues that the members' agreement provides that, if the defendant leaves his employment with the LLC, his capital account would be paid back to him and he would no longer qualify for further profit distributions as a member of the LLP. This is a misreading of the members' agreement, as no such provision regarding employment at the LLC exists. Rather, the members' agreement provides in paragraph 22.3.2 that a *member who leaves the LLP* shall have his capital returned to him.

Finally, the plaintiff contends that the underlying facts of the present case are substantially similar to those in *Halperin* v. *Halperin*, 196 Conn. App. 603, 230 A.3d 757 (2020). In *Halperin*, the parties' separation agreement, which was incorporated by reference into the dissolution judgment, provided that unallocated support was to be paid based on a certain percentage of, inter alia, the husband's gross base income. Id., 605 and n.1. The separation agreement in that case defined income as the parties' total income, which had been historically listed on line 22 of the parties' joint 1040 federal tax returns, and included all employment, business, partnership, consulting or real estate income whether received in cash or not. Id., 607. This court concluded that the income received by the husband as a result of an interest he acquired postjudgment in two companies was included in the unallocated support calculation, because such income or losses from S corporations and partnerships historically had been listed on line 22 of the parties' federal tax return. See id., 609–20. The facts in *Halperin* are distinguishable from those in the present case. The separation agreement in *Halperin* defined income for support purposes by reference to line 22 of the parties' federal tax return, which the separation agreement in the present case does not do. Rather, the separation agreement in the present case defines income for support purposes as "any and all earnings of any nature whatsoever actually received by the [defendant] . . . or which [the defendant] is entitled to receive, from any and all sources relating to the services rendered by the [defendant] by way of his past, current or future employment," which is markedly distinguishable from the separation agreement in *Halperin*, which defined income by referring to a specific line in the parties' federal tax return.

For the foregoing reasons, we conclude that the court properly denied the plaintiff's motion for an order finding an arrearage. The distributions received by the defendant were not included in the clear and unambiguous definition of gross annual earned income from employment, as set forth in the parties' separation agreement.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff does not challenge the court's conclusion that the defendant was not in wilful contempt of any court order.

[2] The plaintiff does not claim that the defendant manipulated his salary and member distributions to reduce his support obligation.

[3] The plaintiff cites to schedules 2 and 3 of the members' agreement and quotes language purportedly from those provisions regarding the responsibilities and duties of new members. Schedules 2 and 3 of the members' agreement do not contain language regarding the duties and responsibilities of new members; rather, those sections pertain to "[d]etails of the LLP" and "[v]aluation of [u]nits," respectively. The language relied on by the plaintiff regarding "responsibilities" and "duties" is not contained within the members' agreement.