******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

BRIAN DOLAN *v.* DEBRA DOLAN
(AC 43602)

Moll, Clark and DiPentima, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting his motion to modify his unallocated alimony and child support
obligation. In his motion, the plaintiff requested to modify certain provi-
sions of the parties' separation agreement, which had been incorporated
into the judgment of dissolution, on the basis of, inter alia, his loss of
employment and decrease in income. The parties' separation agreement
provided in relevant part that the plaintiff was required to pay unallo-
cated alimony and child support to the defendant, which was calculated
on the basis of the plaintiff's "pre-tax compensation from employment"
and included a minimum payment per month. The separation agreement
defined "pre-tax compensation from employment" to include any and
all earnings of any nature whatsoever actually received by the plaintiff
in the form of cash or cash equivalents, or which the plaintiff is entitled
to receive, from any and all sources relating to the services rendered
by the plaintiff by way of his current or future employment. At a hearing
on the plaintiff's motion, the plaintiff claimed that he had no income,
but, when asked, testified that he receives interest and dividend income
that he had failed to list on his financial affidavit. The court subsequently
granted the plaintiff's motion, finding that there was a substantial change
in the parties' circumstances. The court ordered, inter alia, that the
plaintiff was not required to pay the defendant a minimum amount of
unallocated alimony and child support per month. The court also
ordered, as proposed by the defendant, that the definition of "pre-tax
compensation from employment" set forth in the parties' separation
agreement be modified to include income from all sources, including
passive income from capital gains, interest and dividends, and income
from business interests and other investments. *Held* that the plaintiff
could not prevail on his claim that the trial court abused its discretion
in modifying the definition of "pre-tax compensation from employment"
in the parties' separation agreement: although the plaintiff argued that
the court's inclusion of capital gains, interest and dividends, and income
from business interests and other investments conflicted with our
Supreme Court's decision in *Gay* v. *Gay* (266 Conn. 641), that case
was materially different from the present case in that it involved a
modification pursuant to statute (§ 46b-86 (a)), which required the court
to consider certain statutory (§ 46b-82) criteria and did not involve a
separation agreement like the one in the present case, which expressly
defined the term "pre-tax compensation from employment" and set forth
specific, contractual parameters for modifying that definition; moreover,
it was clear that the parties here, in their separation agreement, intended
to give the court broad discretion to modify the definition of "pre-tax
compensation from employment" to ensure that they were treated fairly
in accordance with the spirit of the agreement, not in accordance with
the criteria set forth in § 46b-82.

Argued December 7, 2021—officially released June 7, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk, where the court, *Hon. Stan-
ley Novack*, judge trial referee, rendered judgment dis-
solving the marriage and granting certain other relief
in accordance with the parties' separation agreement;
thereafter, the court, *M. Moore, J.*, granted the plaintiff's
motion to modify unallocated alimony and child sup-

port; subsequently, the court, *M. Moore, J.*, denied the plaintiff's motion for reargument and reconsideration, and the plaintiff appealed to this court. *Affirmed.*

*Logan A. Carducci*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, for the appellee (defendant).

*Opinion*

CLARK, J. In this matter arising after the dissolution of the parties' marriage, the plaintiff, Brian Dolan, appeals from the judgment of the trial court granting a postjudgment motion to modify his unallocated alimony and child support obligation to the defendant, Debra Dolan. The sole issue on appeal is whether the court erred in modifying the definition of "pre-tax compensation from employment" in the parties' separation agreement, which was incorporated by reference into the judgment of dissolution, to include "income from all sources, including passive income from capital gains, interest and dividends, and income from business interests and other investments." In the plaintiff's view, the court's modification of the definition ran afoul of our Supreme Court's decision in *Gay* v. *Gay*, 266 Conn. 641, 835 A.2d 1 (2003). We disagree and affirm the judgment of the trial court.

The following procedural history and facts are relevant to our resolution of the appeal. The parties were married in 1993 and are the parents of four children issue of the marriage.[1] On May 9, 2013, the trial court, *Hon. Stanley Novack*, judge trial referee, rendered judgment dissolving the parties' marriage that incorporated by reference the parties' May 8, 2013 separation agreement (agreement).

Pursuant to the agreement, the plaintiff is required to pay unallocated alimony and child support to the defendant until her death, remarriage, or cohabitation, or until May 14, 2023, whichever occurs first. The percentage of his "pre-tax compensation from employment" that he is required to pay to the defendant each calendar year is based on the amount of pretax compensation from employment that he receives in that given year. Specifically, in accordance with paragraph 4.2 of the agreement, the plaintiff is required to pay the defendant each calendar year as unallocated alimony and child support as follows:

| [The Plaintiff's] PTCE | Percentage to [the Defendant] |
| --- | --- |
| $0-$250,000 | 50% |
| $250,001-$450,000 | 35% |
| $450,001-$600,000 | 25% |
| $600,000 and above | 0% |

Paragraph 4.2 further provides that, "[u]nless and until modified by [the] [c]ourt, or agreed to by the [p]arties, the [plaintiff] shall pay the [defendant] a minimum of [$10,416] per month."

Under paragraph 4.4 of the agreement, " 'pre-tax compensation from employment' " is defined as "any and all earnings of any nature whatsoever actually received by the [plaintiff] in the form of cash or cash equivalents,

or which the [plaintiff] is entitled to receive, from any and all sources relating to the services rendered by the [plaintiff] by way of his current or future employment, including, but not limited to, salary and bonus, exercisable stock options, stock grants, equity units, contract payments, commission payments, voluntary payments to qualified and non-qualified retirement plans, disability income, board of directors' fees, severance payments, excess compensation, consulting fees, director's fees and restricted stock and stock options granted after the date of dissolution of marriage, received by the [plaintiff] from employment. Income from restricted stock and stock options shall be considered [pre-tax compensation from employment] in the year the [plaintiff] must report this income on his federal tax return. Capital gains, interest and dividends and all other income earned by the [plaintiff] due to his investment of assets or sale of stock distributed to him in connection with the divorce proceeding or earned by the [plaintiff] based upon assets acquired outside of his employment by the [plaintiff] in the future shall not be considered in the definition of the [plaintiff's pre-tax compensation from employment] herein."

Paragraph 4.3 of the agreement provides in relevant part that "[t]he alimony payments under the terms of this [a]rticle IV shall be non-modifiable so as to extend the duration of said payments, and any decree of any [c]ourt incorporating any or all of the provisions hereof shall preclude such modification. The amount of the alimony payments under the terms of this [a]rticle IV shall be subject to modification as to amount pursuant to . . . [General Statutes § 46b-86 (a)], except: in any calendar year, the [defendant] shall be entitled to receive [pre-tax compensation from employment] in an amount of [$35,000] or less without such occurrence constituting a substantial change in circumstances. In any hearing for modification of alimony, the court shall not consider the first [$35,000], of the [defendant's] [pre-tax compensation from employment] in any calendar year in determining whether a substantial change of circumstances has occurred. Proration for any year in which alimony is owed for only part of that year, shall apply to the provisions of this [p]aragraph."

In regard to modifying the definition of "pre-tax compensation from employment," paragraph 4.5 of the agreement provides: "Any court of competent jurisdiction, upon motion by either [p]arty, shall retain jurisdiction to modify the definition of [pre-tax compensation from employment] so as to ensure that both [p]arties are treated fairly in accordance with the spirit of this [a]greement. Neither [p]arty shall be required to demonstrate a substantial change in circumstances with regard to any such modification."

On January 4, 2019, the plaintiff filed the subject motion to modify, requesting that the court "modify articles IV, V, VI, VII, and VIII" of the agreement that

was incorporated into the May 9, 2013 dissolution of marriage judgment. In support of that motion, the plaintiff represented to the court that a chronic medical condition forced him to leave his high paying job, which resulted in a dramatic decrease in his income. Accordingly, he requested various changes to the agreement, including, inter alia, that the court delete the provision in article IV of the agreement that requires him to pay the defendant a minimum of $10,416 per month. He argued that modification of this provision was necessary because two of the parties' children had attained the age of majority and completed four year, postsecondary degrees and, "[m]ore importantly, the minimum monthly payment dictated by the above requires [the plaintiff] to pay the defendant over 90 percent of his disability income." The plaintiff also requested that the percentages of pretax compensation from employment he owed to the defendant under the agreement be reduced, that the amount of life insurance he was required to maintain be lowered, and that the court replace the parenting plan in the dissolution judgment with a new plan as outlined in his motion.

Prior to a hearing on the motion to modify, both parties submitted proposed orders to the court. The plaintiff's proposed orders mirrored the requests he made in the motion to modify. On August 12, 2019, the defendant filed her proposed orders, in which she proposed, inter alia, (1) that the plaintiff's unallocated alimony and child support obligation continue in full force and effect pursuant to the separation agreement, (2) that the definition of "pre-tax compensation from employment" set forth in paragraph 4.4 of the agreement be modified to include income from all sources, including passive income from capital gains, interest and dividends, and income from business interests and other investments, and (3) that the plaintiff will not be required to pay the defendant a minimum of $10,416 per month for a period of one year and, in the event that the plaintiff earns in excess of $600,000, gross, in one year from all sources, he will pay the defendant 20 percent of the gross amount above $600,000 as unallocated alimony and child support. The defendant also made proposals with respect to health insurance for the parties' two minor children, in addition to a parenting plan.

The trial court held a hearing on the motion to modify on August 13, 2019, and issued its order regarding the motion on September 25, 2019. The court found that for years, the plaintiff enjoyed substantial income to the point that he was paying the maximum amount of alimony and child support provided for under the parties' separation agreement. At the time of dissolution in 2013, the plaintiff's gross monthly income was $20,833, and his net monthly income was $14,750. In October, 2018, however, the plaintiff's issues became overwhelming and he stopped working. The court found

that the plaintiff had struggled with mental health issues, and suffered from depression, anxiety, panic attacks, stress, and alcohol abuse for twenty years. He obtained short-term disability payments, but was denied long-term disability payments. At the hearing, the plaintiff testified that he obtained a license to sell real estate; however, he did not know whether he would work in that field. He also was unsure of his plans for the future and was living off his savings. The plaintiff claimed that he had no income, but, when asked, testified that he receives interest and dividend income that he had failed to list on his financial affidavit. The court found that, in 2017, the plaintiff received $12,794 in dividend income and, in 2018, he received $14,387 in qualified dividend income. He has weekly expenses and liabilities of $5586. The total cash value of his assets is $2,173,300.

With respect to the defendant, the court found that she is employed part-time outside the home. On the basis of the child support guidelines calculation, her net income from employment and qualified dividend income is $554 per week. She has $3243 in total net weekly expenses and liabilities and the total cash value of her assets is $1,119,370. The court found that the defendant, too, has suffered from mental health issues and in December, 2018, she was hospitalized. During her hospitalization, the plaintiff assumed the role of primary parent for the parties' minor children.

The court found that there was a substantial change in circumstances since the most recent court order and that it would be unjust or inequitable to hold either party to that order. In granting the plaintiff's motion, the court found that the presumptive amount of child support was $92 per week from the plaintiff to the defendant, but that the application of the guidelines would be inequitable and inappropriate in the present case. The court therefore deviated from the guidelines on the basis of the coordination of total family support and the parties' shared parenting plan and ordered that "the definition of 'pre-tax compensation from employment' set forth in paragraph 4.4 of the parties' separation agreement will be modified to include income from all sources, including *passive income from capital gains, interest and dividends, and income from business interests and other investments*. The [unallocated alimony and child support payment] formula set forth in paragraph 4.2 of the separation agreement dated May 8, 2013, will remain in effect, except the [plaintiff] will not be required to pay the [defendant] a minimum amount per month." (Emphasis added.) Additionally, the court ordered the plaintiff to provide to the defendant: (1) notice of any job offers or acceptances; and (2) documentation of any determination that he has become completely disabled, along with copies of his first three disability checks. Furthermore, the court reduced the amount of life insurance the plaintiff was

required to maintain from $1,250,000 to $500,000, and modified the parenting plan.

On October 9, 2019, the plaintiff filed a motion for reargument and reconsideration of the court's order. In his motion, the plaintiff acknowledged that the defendant rightly had brought to the court's attention income from dividends and interest that he had not included on his financial form, but stated that there was no evidence that he has a steady stream of revenue from capital gains. He contended that the court had misapplied the controlling law by modifying the term "pretax compensation from employment" to include capital gains, including those from passive investments in business, in violation of *Gay* v. *Gay*, supra, 266 Conn. 647–48. He asked the court to delete "capital gains" and the phrase "and income from business interests and other investments" from its order.[2] The court summarily denied the plaintiff's motion for reargument and reconsideration.

The defendant, too, filed a motion for reargument and reconsideration of the court's September 25, 2019 order. She argued that the court should have taken into account the assets of the parties and the plaintiff's earning capacity, not only the income from the plaintiff's assets. The court summarily denied the defendant's motion for reargument and reconsideration as well.[3] The plaintiff timely appealed.[4]

We begin by setting forth the legal principles that inform our discussion and the standard of review pertinent to the plaintiff's claim. Section 46b-86 (a) provides in relevant part: "*Unless and to the extent that the decree precludes modification*, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ." (Emphasis added.)

When the parties in a dissolution matter have a separation agreement that has been incorporated into a dissolution decree, interpretation of that separation agreement is "guided by the general principles governing the construction of contracts." (Internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the

contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) Id. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citation omitted; internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008). "The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, 117 Conn. App. 229, 231–32, 978 A.2d 538, cert. denied, 294 Conn. 915, 983 A.2d 852 (2009).

Moreover, "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 372, 999 A.2d 721 (2010). "[T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Emerick* v. *Emerick*, 170 Conn. App. 368, 378, 154 A.3d 1069, cert. denied, 327 Conn. 922, 171 A.3d 60 (2017).

In the present case, the plaintiff argues that the court abused its discretion when it modified the definition of "pre-tax compensation from employment" in the parties' separation agreement, which was incorporated by reference into the judgment of marriage dissolution, to include "income from all sources, including passive income from capital gains, interest and dividends, and income from business interests and other investments." In his view, *Gay* v. *Gay*, supra, 266 Conn. 647–48, as a matter of law, precluded the court from doing so. We disagree.

In *Gay*, after a thirty-two year marriage, the plaintiff wife brought an action seeking a dissolution of the marriage. Id., 642–43. The court rendered a judgment of dissolution that incorporated by reference a stipulation entered into by the parties dated December 20, 1996. Id., 643. The judgment provided, inter alia, that the defendant husband must pay alimony to the plaintiff in the amount of $730 per month. Id. On September 29, 1999, the defendant moved for a modification of the alimony payments. Id. In his motion, the defendant claimed that his retirement, and the accompanying decrease in income, constituted a substantial change in circumstances. Id. Furthermore, he noted that the

plaintiff's income and assets had dramatically increased so that her circumstances had changed for the better. Id. After hearing arguments on the matter, the court reduced the defendant's alimony obligation to $1 per year and ordered the parties to exchange copies of their respective federal tax returns for the following three years. Id. The court articulated the basis for its conclusion that the parties' income was now in parity and, therefore, the alimony award should be modified. Id. After making certain adjustments to the net income reflected on the plaintiff's financial affidavit, the court found that the defendant had a net income of $1268 per week and the plaintiff had a net income of $1323 per week. Id. In its articulation, the court indicated that it had included both short-term and long-term capital gains in determining the plaintiff's income for purposes of the modification. Id. The court further indicated that, in assessing the plaintiff's income for 1999, it disregarded capital losses from a prior year that the plaintiff had, for the purpose of calculating income tax, carried over into 1999. Id.

On appeal to this court, we concluded that the trial court had improperly included all of the plaintiff's capital gains as income without determining how much, if any, of those gains were generated from assets that were acquired after the dissolution. Id., 644. As a result, this court reversed the order of the trial court, and remanded the case with an instruction to determine whether the plaintiff had realized capital gains from assets acquired after the dissolution. Id. The plaintiff then petitioned our Supreme Court for certification to appeal, which our Supreme Court granted. Id.

Our Supreme Court held that, "[a]t least where, as is generally the case, capital gains do not represent a steady stream of revenue, the fact that a party has enjoyed such gains in a particular year does not provide a court with an adequate basis for assessing that party's long-term financial needs or resources." (Footnote omitted.) Id., 647. The court concluded "that capital gains are not income for purposes of modification of an order for continuing financial support if those gains do not constitute a steady stream of revenue. This is true without regard to whether the assets from which those gains are derived were acquired before or after the dissolution." Id., 647–48. The court went on to explain that "[t]he fact that capital gains on property distributed at dissolution may not be considered income under [General Statutes] § 46b-82 does not mean, however, that changes in the value of such property, whether realized or not, may never be taken into consideration by a court in considering a modification of alimony. The fact that the trial court has no authority to modify the assignment of property made at dissolution; see General Statutes § 46b-86 (a); does not mean that the court cannot consider a change in the value of that property in determining whether there has been

a substantial change of circumstances justifying the modification of an alimony award." (Emphasis omitted.) Id., 648. Accordingly, the court affirmed this court's reversal of the judgment of the trial court on alternative grounds and ordered this court to remand the case to the trial court for a new hearing on the defendant's motion for modification. Id., 648–49.

Although the plaintiff contends that our Supreme Court's decision in *Gay* is "on all fours" with the issue presented here, we find *Gay* materially different from the facts of the present case. *Gay* involved a modification of alimony pursuant to § 46b-86 (a), which requires a court to consider the criteria set forth in § 46b-82[5] after a determination that there has been a substantial change in circumstances. See General Statutes § 46b-86 (a) ("[i]f a court finds that a substantial change in circumstances of either party has occurred, the court shall determine what modification of alimony, if any, is appropriate, considering the criteria set forth in section 46b-82"). Our Supreme Court held that capital gains should not be considered income under § 46b-82 if those gains do not constitute a steady stream of revenue. See *Gay* v. *Gay*, supra, 266 Conn. 647–48.

*Gay* did not involve a separation agreement like the one incorporated by reference into the divorce decree in the present case, expressly defining the term "pre-tax compensation from employment" and setting forth specific, contractual parameters for modifying that definition. In the present case, paragraph 4.5 of the parties' agreement provides: "Any court of competent jurisdiction, upon motion by either [p]arty, shall retain jurisdiction to modify the definition of [pre-tax compensation from employment] so as to ensure that both [p]arties are treated fairly *in accordance with the spirit of this [a]greement.* Neither [p]arty shall be required to demonstrate a substantial change in circumstances with regard to any such modification." (Emphasis added.)

It is clear that the parties, vis-à-vis paragraph 4.5, intended to give the court broad discretion to modify the definition of "pre-tax compensation from employment" to ensure that the parties are "treated fairly *in accordance with the spirit of* [*the*] [*a*]*greement.*" (Emphasis added.) Nothing in paragraph 4.5 of the agreement references § 46b-82 or otherwise demonstrates an intent to require a court to modify the definition of that term in accordance with § 46b-82. See *Clark* v. *Clark*, 66 Conn. App. 657, 665, 785 A.2d 1162 ("[t]he court is not required, however, to consider all of the § 46b-82 criteria when modification of alimony is sought pursuant to a dissolution agreement"), cert. denied, 259 Conn. 901, 789 A.2d 990 (2001); see also *Fazio* v. *Fazio*, 162 Conn. App. 236, 243–44, 131 A.3d 1162 ("a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts" (inter-

nal quotation marks omitted)), cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016). The parties here clearly foresaw that the definition of "pre-tax compensation from employment" might require modification in the future. The plain language of paragraph 4.5 demonstrates that they intended any such modification be done in accordance with the "spirit of [the] [a]greement" to ensure fairness, not in accordance with the criteria of § 46b-82. The remaining language in paragraph 4.5 buttresses this conclusion. It states that "[n]either [p]arty shall be required to demonstrate a substantial change in circumstances with regard to any such modification." That provision conflicts directly with § 46b-86 (a) and is further evidence that the parties did not intend to be governed by the statutes that otherwise apply to requests for modifications of alimony.

If the parties had wanted to prohibit a court from modifying the agreement's definition of "pre-tax compensation from employment" to include passive income from capital gains, they could have included that limitation in their separation agreement. See *Ceddia* v. *Ceddia*, 164 Conn. App. 266, 274, 137 A.3d 830 (2016) ("[w]hen the parties wished to preclude one aspect of possible periodic alimony modification, they knew how to do so"). For example, in paragraph 4.3 of the agreement, they expressly stated that the duration of alimony payments "shall be non-modifiable . . . ." Moreover, if the parties had wanted a court to modify the definition by taking into consideration all the criteria of § 46b-82, they could have said so in the agreement. *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 197, 112 A.3d 144 (2015) ("[i]ndeed, had the parties intended to import the remedial aspect of § 46b-86 (b), in addition to its definitional portion, they could have used more expansive reference terms such as 'in accordance with' or 'pursuant to' "). They did not do so.

In light of the foregoing, we are persuaded that the parties' agreement brings this case outside the purview of *Gay* v. *Gay*, supra, 266 Conn. 641. As a result, and upon our review of the record before us, we cannot conclude that the court abused its discretion when it modified the definition of pretax compensation from employment to include "income from all sources, including passive income from capital gains, interest and dividends, and income from business interests and other investments."

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Only the parties' two youngest children were minors at the time of the hearing on the motion to modify.

[2] The plaintiff requested that the court amend its order as follows: "The court modifies the separation agreement as follows: the definition of 'pretax compensation from employment' set forth in paragraph 4.4 of the parties' separation agreement will be modified to include income from all sources, including passive income from interest and dividends."

[3] The defendant has not appealed from the denial of her motion for reargument.

[4] On March 10, 2020, the plaintiff filed a motion for articulation with the

trial court. The plaintiff requested that the court articulate its decision to modify the definition of pretax compensation from employment in the separation agreement. The court denied the motion for articulation. Thereafter, the plaintiff filed a motion for review with this court. This court granted the motion for review, but denied the relief requested. This court sua sponte ordered the trial court to "rectify the record to include the parties' proposed orders, referred to [in the transcript of the hearing held on August 19, 2019, which were] not included in the trial court file or exhibits. If the parties stipulate and provide copies of the proposed orders, the trial court may approve the stipulation and rectify the record without a hearing." The trial court approved the parties' stipulation on October 29, 2020.

[5] General Statutes § 46b-82 (a) provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."